RYAN E. HATCH
ryan@hatchlaw.com
California Bar No. 235577
**HATCH LAW, PC**
13323 Washington Blvd., Suite 302
Los Angeles, CA 90066
Tel: (310) 279-5079
Fax: (310) 693-5328

ALAN D. SEGE
alan@alansege.com
California Bar No. 177350
**ALAN SEGE, ESQ. PC**
13323 Washington Blvd., Suite 302
Los Angeles, CA 90066
Tel: (310) 957-3301
Fax: (310) 693-5328

*Attorneys for Plaintiff Actian Corporation*

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ACTIAN CORPORATION,<br><br>Plaintiff,<br>v.<br><br>SS&C TECHNOLOGIES, INC.,<br><br>Defendant. | **CASE NO. 5:24-cv-5064**<br><br>**COMPLAINT FOR:**<br>1. **Breach of Contract;**<br>2. **Copyright Infringement; and**<br>3. **Negligence**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, Actian Corporation ("Plaintiff" or "Actian"), hereby files this Original Complaint and asserts, through its attorneys, claims against SS&C Technologies, Inc. ("SS&C" or "Defendant").

**PARTIES**

1. Plaintiff Actian Corporation is a Delaware corporation with its principal place of business at 2600 Great America Way, Suite 401, Santa Clara, CA 95054. Actian is renowned for its innovative data management, integration, and analytics technologies. Actian has an installed base of many thousands of customers including large global enterprises, public sector entities, and small to medium enterprises. One of Actian's technologies is a database management system known as Pervasive PSQL, also known as "Actian Zen" starting with Version 13 (the "Software"). The Software is used in packaged software applications offered by independent software vendors (ISVs) and original equipment manufacturers (OEMs).

2. Defendant SS&C Technologies, Inc. is a Connecticut corporation having its headquarters at 80 Lamberton Road, Windsor, CT 06095. SS&C develops, markets, sells, distributes and hosts computer programs and systems such as its (i) Skyline software, which it promotes as, "a dynamic, powerful lease management and accounting system designed to increase productivity, occupancy and profitability for residential and commercial property owners and managers;" and (ii) HiPortfolio software that it promotes as "An award-winning investment accounting and asset servicing solution fit for complex local, regional and global processing and tax requirements trusted by TPAs and asset managers from 35+ countries." The Skyline and HiPortfolio software products are referred to herein singly as an "OEM Product" and collectively as the "OEM Products."

3. Each of Skyline and HiPortfolio software products receive, store, analyze and output data using editions of the Software. Tenants, landlords, managers, vendors, and other users of Skyline and HiPortfolio are serviced by the Software.

4. Actian provides SS&C access to the Software through agreements, entrusting SS&C to select and distribute the edition of the Software whose license terms permit the use enabled by SS&C's software applications, and to report and pay for each

distribution. Actian recently discovered that SS&C habitually selects the least expensive versions of the Software – versions whose license terms do not allow SS&C's uses. SS&C's scheme results not only in breaches of SS&C's contracts with Actian and failure to pay, but in widespread unlicensed reproduction and distribution of the Software throughout the real property and asset management industries, harming this important market for Actian's software, and constituting acts of widespread copyright infringement.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction because the subject matter of this action arises under the United States Copyright Act of 1976, 17 U.S.C. § 501 and because there is supplemental jurisdiction under 28 U.S.C. § 1367.

6. This Court has personal jurisdiction over Defendant, and venue is proper in this District, due to a forum selection clause. In one or more of the operative agreements between the parties, SS&C agreed that "All disputes arising out of or relating to this Agreement shall be brought exclusively in the federal courts located in the Northern District of California or the state courts located in Santa Clara County, California, and the parties agree to submit to the exclusive jurisdiction and venue of such courts." *See, e.g.*, Version 13 End-User License Agreement, Section 12.3.

7. Additionally, Defendant has engaged in systematic and continuous business activities in California. SS&C maintains regular places of business in this District and in California, including at the following locations: 580 California Street, Suite 200, San Francisco, CA 94104; and 600 Townsend Street, 4th Floor, San Francisco, CA 94103; 1651 Response Road, Suite 350, Sacramento, CA 95815; and 1875 Century Park East, 4th floor, Suite 400, Los Angeles, CA 90067.

8. And as described below, Defendant has breached contracts, infringed copyrights, and committed negligence and other violations giving rise to this action in the State of California and within this District.

9. Additionally, venue is proper in this District. A substantial part of the events or omissions giving rise to claims herein occurred in this District. Furthermore, SS&C resides in this District for purposes of 28 U.S.C. § 1391 because SS&C, or its controlled companies publicly and regularly operate, maintain, and conduct business in this District, including at the above-referenced regular places of business throughout the State of California.

10. Plaintiff incorporates all allegations in this Complaint herein for purposes of jurisdiction and venue.

## FACTUAL BACKGROUND

11. The Software is protected under United States Copyright Law and is registered for copyright in U.S. Copyright Registration Numbers TX0007494553, TX0007494380, TX0007494556, TX0007348174, TX0007348201, TX0007348199, TX0007348176, TX0007494543, TX0007494545, TX0008943036, TX0009363805, TX0009365932, and TXu002269422 (collectively, the "Actian Copyrights").

12. The Software is protected by End-User License Agreements (singly, a "EULA" or collectively, the "EULAs"). The exemplary Version 13 EULA is attached hereto as Exhibit A. The EULAs for Versions 11, 12, 14, and 15 are attached hereto as Exhibits B, C, D, and E, respectively.

13. In addition to the EULAs, on September 24, 2013, SS&C and Actian's predecessor Pervasive Software Inc. ("Pervasive") entered into a North American OEM Agreement and, subsequently, Addendum Nos. 1-4 (collectively, the "OEM Agreement," attached hereto as Exhibit F). The OEM Agreement allowed SS&C to purchase licenses to copies of various editions of the Software and to use and distribute copies of the Software, only combined into an OEM Product.

14. The OEM Agreement expired on March 20, 2024, and the parties have not entered into any new agreement. As of that time, SS&C projected requiring hundreds of licenses to use or distribute copies of the Software. The Software licenses are

available from resellers, from whom SS&C continues to procure them.

15. The EULAs and OEM Agreement are referred to herein collectively as the "Agreements."

16. The Software was made available to SS&C via restricted licenses as set forth in the Agreements.

17. For editions of the Software other than the Vx Server Edition, SS&C agreed in the EULAs to use the Software only for "internal business purposes" or "personal use" (e.g. Version 13 EULA at Section 2.1(a)), and further agreed that they "only [have] the right to market and distribute the Software to those parties who use the OEM Product for their own internal business purposes or personal use ('End Users') and to third parties ('Resellers') who acquire the OEM Product for remarketing to End Users." OEM Agreement, Section 1.3 (first sentence).

18. Additionally, SS&C agreed that "Except as expressly authorized in the Pervasive EULA (as defined below), [SS&C] shall not, and shall not authorize its Resellers and End Users to, rent, lease, or time share the Software or documentation or any part thereof, or use the Software to host applications for third parties or to provide service bureau, time-sharing or other computer services to third parties." OEM Agreement, Section 1.3 (second sentence).

19. Thus, for editions of the Software other than the Vx Server Edition, the Software was limited to internal business purposes and personal use and could not be used – either by SS&C or its customers – to host applications for third parties or provide services to third parties.

20. However, for the Vx Server Edition, the EULAs provided that "there are no restrictions on use of the Vx Server Edition as a 'software as a service', in an application service provider environment, and/or on the Internet or Intranet or by multiplexing" (*see, e.g.,* Version 13 EULA at 2.1(c)).

21. Accordingly, if SS&C wanted to use the Software in a software as a service

("SaaS") application, or distribute to customers to host services, or use outside personal or internal business uses, they were required to purchase licenses to copies of the Vx Server Edition in sufficient quantities for all such uses.

22. In 2024, as part of Actian's standard renewal process, Actian sent an audit questionnaire to SS&C. From SS&C's written and oral responses, Actian discovered on April 1, 2024, that SS&C was using and distributing the Software in a manner that was not permitted under the Agreements.

23. In particular, SS&C's responses laid bare that SS&C had engaged in a pervasive and systematic process of using, reproducing and distributing the lowest-priced editions of the Software for non-internal uses such as providing services for third parties, hosting systems for access by third parties, and for SaaS applications, rather than the only edition whose license terms permitted that – Zen Vx Server.

24. After discovering SS&C's improper uses and exploitation, Actian notified SS&C that this use was a material breach of the Agreements and a violation of U.S. Copyright laws. Actian offered SS&C an opportunity to enter into another license agreement to cover the improper uses, but SS&C refused. This lawsuit followed.

## FIRST CLAIM FOR RELIEF

**(Breach of Contract)**

25. Actian restates and incorporates by reference every allegation of the preceding paragraphs.

26. One or more contracts existed between Actian and SS&C, as embodied in the Agreements.

27. Actian performed under the Agreements, for example by providing the Software to SS&C.

28. SS&C materially breached the Agreements, for example by engaging in the following wrongful acts:

    a. SS&C breached the EULAs, for example Section 2.1 of the Version 13

EULA and similar provisions of the other EULAs, by permitting a total number of concurrent users greater than the permitted user count to simultaneously access and use the Software;

    b. SS&C breached the EULAs, for example Section 2.1 of the Version 13 EULA and similar provisions of the other EULAs, by using the Server Edition for non-internal business purposes;

    c. SS&C breached the EULAs, for example Section 2.1 of the Version 13 EULA and similar provisions of the other EULAs, by failing to purchase a Vx Server Edition license;

    d. SS&C breached the EULAs, for example Section 4.2 of the Version 13 EULA and similar provisions of the other EULAs, by failing to obtain the express written consent of Actian to use the Software to permit third-party access to or use of the Software, or use, access, or allow access to the Software operating in a SaaS or similar hosted environment;

    e. SS&C breached the EULAs, for example Section 4.2 of the Version 13 EULA and similar provisions of the other EULAs, by failing to obtain the express written consent of Actian to use the Software to operate hosting or a SaaS.

    f. SS&C breached the EULAs, for example Section 12.6 of the Version 13 EULA and similar provisions of the other EULAs, by failing to perform a self-audit, which would have revealed a discrepancy that SS&C previously and currently is using more copies of the Software than what are permitted under licenses and the Agreements;

    g. SS&C breached the EULAs, for example Section 12.6 of the Version 13 EULA and similar provisions of the other EULAs, by failing to pay Actian all unpaid amounts due to Actian based on the discrepancy between SS&C's actual versus permitted uses;

      h.   SS&C breached the OEM Agreement, including but not limited to Section 1.3, by distributing the Software to third parties (e.g., landlords) who used the Software for non-internal business purposes or non-personal uses (e.g., landlords provided tenants access to the Software for non-internal and non-personal uses);

      i.   SS&C breached the OEM Agreement, including but not limited to Section 1.3, by hosing the Software for third parties (e.g., landlords); and

      j.   SS&C breached the OEM Agreement, including but not limited to Section 1.3, by sharing and authorizing third parties (e.g., landlords) to, rent, lease, or time share the Software as hosted applications for other third parties (e.g., tenants).

29. The foregoing are only exemplary breaches of which Actian is currently aware, and there are likely other breaches that have been concealed from Actian.

30. Actian suffered harm as a result of SS&C's breaches. For example, SS&C is using and distributing the Software in violation of the Agreements, and without paying Actian for those uses and distributions. As another example, Actian has suffered harm because SS&C enables third parties and others to use the Software in ways that are not licensed, without paying Actian for any licenses to editions of the Software that could have permitted some of those uses.

31. In addition to actual and compensatory damages, Actian is entitled to attorneys' fees and costs under Section 15.2 of the OEM Agreement.

## SECOND CLAIM FOR RELIEF
### (Direct and Indirect Copyright Infringement)

32. Actian restates and incorporates by reference every allegation of the preceding paragraphs.

33. Actian is the owner of the Copyrights, which are valid.

34. SS&C is liable for direct infringement of the Copyrights by using,

reproducing, and distributing substantial portions or entire copies of the Software outside the scope of uses, reproductions and distributions allowed by the Agreements.

35. SS&C is also liable for contributory copyright infringement of the Copyrights because it has had knowledge of third parties' infringing activity, and induced, caused, or materially contributed to the infringing conduct. By way of example, SS&C designs and markets the OEM Products to provide services to tenants, clients, suppliers and other third parties interacting with real property and asset managers who are SS&C's customers. But SS&C embeds low-price editions of the Software whose licenses prohibit those non-internal uses and servicing of third parties.

36. For the OEM Products to function properly and to enable SS&C to continue to sell and provide support services for the OEM Products to their customers, each customer must from time to time upgrade the Software and purchase an up-to-date version. Customers at times purchase the upgrades from Actian resellers other than SS&C, purchasing an upgrade from the incorrect, non-Vx Server edition that SS&C originally embedded with the OEM Product, thereby continuing to violate the limitations and restrictions of the EULA of the upgrade licenses they purchase. They purchase the unlicensed upgrades with SS&C's knowledge, and SS&C substantially participates by continuing to provide OEM Product support to those customers.

37. SS&C is also liable for vicarious infringement of the Copyrights. SS&C has had the right and ability to supervise third parties' infringing activity and has had a direct financial interest in the activity. For example, SS&C itself selects the editions of the Software to embed in the OEM Products and saves money by embedding copies of editions whose end user licenses do not permit those uses, and in so doing dramatically underpays Actian under the Agreements.

38. To keep their OEM Products operational and supported by SS&C, customers perpetuate the unlicensed exploitation of the Software by purchasing upgrades to the Software through SS&C or another Actian reseller. In controlling the

requirement that customers upgrade their unlicensed Software deployments, SS&C is liable for vicarious infringement, since it benefits at least by customers continuing to pay SS&C for support and ongoing service for their OEM Products.

39. SS&C has committed additional acts of indirect copyright infringement, consisting of contributory and vicarious infringement, including without limitation by engaging in the following acts:

      a. SS&C hosts the Software and allows, and does not take measures to stop, third-party use, distribution, and access to the Software without permission from Actian; and

      b. SS&C provides infringing tools to third parties by encouraging and instructing third parties to download and use the Software for purposes prohibited by the Agreements, and in so doing benefits by underpaying Actian.

40. The foregoing are only exemplary acts of direct and indirect copyright infringement, and there are likely other acts of infringement of which Actian remains unaware.

41. SS&C's infringement has been willful and intentional.

42. As a direct and proximate result of SS&C's wrongful conduct, Actian is entitled to damages in an amount to be proven at trial. Such damages include but are not limited to Actian's actual damages, profits attributable to infringement, statutory damages, willful infringement, and attorneys' fees and costs as set forth in the OEM Agreement and 17 U.S.C. § 505, and under other relevant laws.

## THIRD CLAIM OF RELIEF

### (Negligence)

43. Actian restates and incorporates by reference every allegation in the preceding paragraphs.

44. SS&C owed a duty of care to Actian to review and properly comply with

the Agreements, and thereafter to report to Actian, pay Actian, submit to audits by Actian and in all other respects comply with the Agreements, and in the alternative not to engage in any reproducing, distributing, and infringing of Actian's copyrighted works, including without limitation the Software.

45. To the extent SS&C's view of the Agreements was unclear about hosting and third party uses, SS&C owed Actian a duty of care to review, understand and attempt to comply with the terms and conditions of the Agreements, and to communicate and consult with Actian at the time, before engaging in potentially unlawful behavior by failing to execute a valid purchase under the terms of the Agreement.

46. Even if SS&C erroneously believed that it had the right to host and allow third party access to Actian's ZEN Software, SS&C breached its duty of care to Actian by failing to review the Agreements at the time they engaged in their actions, and SS&C further breached their duty of care to Actian by failing to consult with Actian as to whether the Agreements permitted their planned course of action.

47. And even if SS&C erroneously believed that it had the right to host and allow third party access to the Software under the Agreements, SS&C breached its duty of care to communicate and consult with Actian at the time, before engaging in its series of acts and omissions violating the Agreements and infringing the Copyrights.

48. SS&C's breach caused Actian harm including without limitation anguish, expenditure of time, money, and other resources in efforts to investigate and recover from SS&C's negligent conduct. SS&C is liable to Actian for compensatory damages. Actian also seeks an injunction against further negligent conduct by SS&C.

## PRAYER FOR RELIEF

Wherefore, in consideration of the foregoing, Plaintiff prays for judgment against the SS&C as follows:

1. An order finding that SS&C is liable for breach of contract of one or more

of the Agreements;

2. An order finding that SS&C is liable for copyright infringement, including direct and indirect infringement of one or more of the Copyrights;

3. For actual damages for copyright infringement under 17 U.S.C. § 504(b);

4. For damages consisting of SS&C's profits attributable for copyright infringement, under 17 U.S.C. § 504(b);

5. For statutory damages for copyright infringement under 17 U.S.C. § 504(c);

6. Attorneys' fees and costs as set forth in the OEM Agreement, 17 U.S.C. § 505, and under other relevant law;

7. For an injunction against SS&C, and its agents, users, affiliates, partners, vendors, customers, employees and any others acting in concert with any of them from continued breaches of the Agreements, and continued acts of copyright infringement;

8. For an order requiring SS&C and its agents, users, affiliates, partners, customers and all others who may be using Actian's Software in an unauthorized manner to return the Actian Materials and cease and desist from all use of the Software;

9. For damages commensurate with SS&C's unjust enrichment;

10. Interest under the maximum amount allowable on damages for all asserted claims; and

11. For all such other and further relief as the Court deems just and proper.

## **JURY TRIAL DEMANDED**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff requests a trial by jury of any issues so triable by right.

| | | |
|---|---|---|
| Dated: August 12, 2024 | | Respectfully submitted, |

/s/Ryan Hatch
Ryan E. Hatch
ryan@hatchlaw.com
California Bar No. 235577
**Hatch Law, PC**
13323 Washington Blvd., Ste. 302
Los Angeles, CA 90066
Tel: (310) 279-5076
Fax: (310) 693-5328

Alan D. Sege
alan@alansege.com
California Bar No. 177350
**ALAN SEGE, ESQ. PC**
13323 Washington Blvd., Suite 302
Los Angeles, CA 90066
Tel: (310) 957-3301
Fax: (310) 693-5328

*Attorneys for Plaintiff Actian Corporation*