1  NICOLE L. CHESSARI (SBN 259970)
   *NChessari@goodwinlaw.com*
2  **GOODWIN PROCTER LLP**
   601 Marshall Street
3  Redwood City, California 94063
   Tel. +1 650 752 3100
4  Fax: +1 650 853 1038

5  JEFFREY A. SIMES (*Pro Hac Vice*)
   *JSimes@goodwinlaw.com*
6  **GOODWIN PROCTER LLP**
   The New York Times Building
7  620 Eighth Avenue
   New York, New York 10018
8  Tel. +1 212 813 8800
   Fax: +1 212 355 3333

9
   ***Additional Counsel Listed in Signature Block***
10
   Attorneys for Defendant
11 SS&C TECHNOLOGIES, INC.

12

13              IN THE UNITED STATES DISTRICT COURT

14             FOR THE NORTHERN DISTRICT OF CALIFORNIA

15                      SAN JOSE DIVISION

16

17 ACTIAN CORPORATION,                    Case No. 4:24-cv-05064-HSG

18             Plaintiff,                 **SS&C TECHNOLOGIES, INC.'S
                                          NOTICE OF MOTION AND MOTION
19     v.                                 TO DISMISS COMPLAINT;
                                          MEMORANDUM OF POINTS AND
20 SS&C TECHNOLOGIES, INC.,               AUTHORITIES**

21             Defendant.                 Date:       January 9, 2025
                                          Time:       2:00 p.m.
22                                        Dept:       Oakland, Courtroom 2
                                          Judge:      Judge Haywood S. Gilliam, Jr.
23                                        Trial Date: None Set
                                          Date Action Filed:   August 12, 2024
24
                                          Filed/Lodged Concurrently:
25                                        1)  Declaration of Christen Bremner;
                                          2)  Declaration of Michael Emmons; and
26                                        3)  [Proposed] Order

27

28

GOODWIN PROCTER LLP
ATTORNEYS AT LAW

1

## NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT

**PLEASE TAKE NOTICE** that on January 9, 2025 at 2:00 p.m., or at such later date and time as the Court may order before the Honorable Haywood S. Gilliam, Jr., United States District Judge, in the United States District Court for the Northern District of California, Courtroom 2, located on the 4th Floor of 1301 Clay Street, Oakland, California 94612, Defendant SS&C Technologies, Inc. ("Defendant") will and hereby does move pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(2) to dismiss each and every cause of action in Plaintiff Actian Corporation's ("Plaintiff") Complaint for lack of personal jurisdiction. Additionally, Defendant moves to dismiss each and every cause of action in Plaintff's Complaint for improper venue pursuant to FRCP 12(b)(3). Finally, Defendant moves to dismiss each and every cause of action in Plaintiff's Complaint for failure to state a claim pursuant to FRCP 12(b)(6).

This Motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the accompanying Declaration of Christen Bremner, the accompanying Declaration of Michael Emmons, Proposed Order, the Court's files in this action, the oral argument of counsel at the hearing and on such materials, and evidence as may be presented to the Court.

Dated: October 29, 2024                    Respectfully submitted,


                                           By: */s/ Nicole L. Chessari*
                                           ─────────────────────────
                                               NICOLE L. CHESSARI
                                               *NChessari@goodwinlaw.com*
                                               JEFFERY A. SIMES (*Pro Hac Vice*)
                                               *JSimes@goodwinlaw.com*
                                               FARAZ BEHNAMJOU
                                               *FBehnamjou@goodwinlaw.com*
                                               NICHOLAS C. WILEY
                                               *NWiley@goodwinlaw.com*
                                               **GOODWIN PROCTER LLP**

                                           Attorneys for Defendant
                                           SS&C TECHNOLOGIES, INC.

# TABLE OF CONTENTS

_Toc181103233

I.      INTRODUCTION. ................................................................................................... 1

II.     FACTUAL BACKGROUND. ................................................................................. 2

III.    ARGUMENT. .......................................................................................................... 4

    A.    THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER SS&C TECH, AND THUS, THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO FRCP 12(B)(2). ............................................................ 4

        1.    Legal Standard For Dismissal Under FRCP 12(b)(2). ..................... 4

        2.    This Court Lacks General Jurisdiction Over SS&C Tech. .............. 6

        3.    This Court Also Lacks Specific Jurisdiction Over SS&C Tech. ..... 7

            a.    SS&C Tech Did Not Purposefully Avail Itself Of This Forum. ........................................................................................ 7

            b.    Actian's Claims Do Not Arise Out Of Forum-Related Contacts, Because There Are No Such Contacts. ................. 9

            c.    The Exercise Of Jurisdiction Over SS&C Tech Would Be Unreasonable. ................................................................... 10

    B.    In The Alternative, SS&C Tech Moves To Dismiss Pursuant To FRCP 12(b)(3). 12

    C.    In The Alternative, SS&C Tech Moves To Dismiss Pursuant To FRCP 12(b)(6). 13

        1.    Actian Fails to State an Actionable Claim For Breach of Contract With Respect To The EULAs (Count I). ............................................ 14

        2.    Actian Fails To State An Actionable Claim For Direct Or Indirect Copyright Infringement (Count II). ................................................... 15

        3.    Actian Fails To State An Actionable Claim For Negligence (Count III). ................................................................................................. 17

IV.     CONCLUSION. ................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Aldrich v. Nat'l Collegiate Athletic Ass'n,*
    484 F. Supp. 3d 779 (N.D. Cal. 2020) ...................................................................... 6

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................................................ 13

*AT&T Co. v. Compagnie Bruxelles Lambert,*
    94 F.3d 586 (9th Cir. 1996) ..................................................................................... 4

*Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.,*
    571 U.S. 49 (2013) .................................................................................................... 8

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.,*
    874 F.3d 1064 (9th Cir. 2017) ................................................................................. 9

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ................................................................................................ 13

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 (1985) .............................................................................................. 8, 9

*Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC Inv.,*
    *Inc.,* 788 F.2d 535 (9th Cir. 1986) .......................................................................... 8

*Caribbean Queen, Inc. v. Lee,*
    No. CV-20-09637 AB, 2021 WL 3215110 (C.D. Cal. Mar. 24, 2021) ........... 16, 17

*Computech Int'l, Inc. v. Compaq Computer Corp.,*
    No. 02–CV–2628 (RWS), 2004 WL 1126320 (S.D.N.Y. May 21, 2004).............. 18

*Corcoran v. CVS Health Corp.,*
    169 F. Supp. 3d 970 (N.D. Cal. 2016) ..................................................................... 6

*Core-Vent Corp. v. Nobel Indus. AB,*
    11 F.3d 1482 (9th Cir. 1993) ............................................................................ 10, 12

*Daimler AG v. Bauman,*
    134 S.Ct. 746 (2014) ........................................................................................ 4, 5, 6

*Doe v. Unocal Corp.,*
    248 F.3d 915 (9th Cir. 2001), *abrogated on other grounds by Williams v.*
    *Yamaha Motor Co. Ltd.,* 851 F.3d 1015 (9th Cir. 2017) ............................... 4, 9, 10

ii

GOODWIN PROCTER LLP
ATTORNEYS AT LAW

*DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*,
   747 F.3d 145 (2d Cir. 2014) .................................................................................. 14

*Fields v. Sedgwick Associated Risks, Ltd.*,
   796 F.2d 299 (9th Cir. 1986) ................................................................................. 11

*Fixed Income Shares: £Series M v. Citibank N.A.*,
   130 F. Supp. 3d 842 (S.D.N.Y. 2015) ................................................................... 18

*In re Gen. Motors LLC Ignition Switch Litig.*,
   257 F. Supp. 3d 372 (S.D.N.Y. 2017), *modified on reconsideration*, 2017 WL
   3443623 (S.D.N.Y. Aug. 9, 2017) ......................................................................... 18

*Harrington v. Pinterest, Inc.*,
   No. 5:20-cv-05290-EJD, 2021 WL 4033031 (N.D. Cal. Sept. 3, 2021) ................ 16

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*,
   328 F.3d 1122 (9th Cir. 2003) ............................................................................... 12

*Hartmann v. Popcornflix.com LLC*,
   690 F. Supp. 3d 309 (S.D.N.Y. 2023) ................................................................... 17

*Holland America Line Inc. v. Wärtsilä North America, Inc.*,
   485 F.3d 450 (9th Cir. 2007) ................................................................................... 7

*J & J Sports Prods.*,
   No. 18 Civ. 2547 (ARR) (VMS), 2018 WL 7916309,
   (E.D.N.Y. Nov. 21, 2018) ...................................................................................... 17

*Lamda Sols. Corp. v. HSBC Bank USA, N.A.*,
   574 F. Supp. 3d 205 (S.D.N.Y. 2021) ................................................................... 14

*Lefkowitz v. John Wiley & Sons, Inc.*,
   No. 13 Civ. 6414(KPF), 2014 WL 2619815 (S.D.N.Y. June 2, 2014) ................. 16

*Mehr v. Fed'n Internationale de Football Ass'n*,
   115 F. Supp. 3d 1035 (N.D. Cal. 2015) .................................................................. 7

*In re Nissan N. Am., Inc. Litig.*,
   No. 18-cv-07292-HSG, 2019 WL 4601557 (N.D. Cal. Sept. 23, 2019) ................ 12

*Perfect 10, Inc. v. Giganews, Inc.*,
   No. CV11-07098 AHM, 2013 WL 2109963 (C.D. Cal. Mar. 8, 2013), *aff'd*,
   847 F.3d 657 (9th Cir. 2017) ................................................................................. 16

*Perkins v. Benguet Consolidated Mining Co.*,
   342 U.S. 437 (1952) ................................................................................................. 5

iii

GOODWIN PROCTER LLP
ATTORNEYS AT LAW

*Picot v. Weston*,
     780 F.3d 1206 (9th Cir. 2015) ........................................................................... 5, 6, 7

*Ranza v. Nike, Inc.*,
     793 F.3d 1059 (9th Cir. 2015) ................................................................................... 5

*Rider v. Uphold HQ Inc.*,
     657 F. Supp. 3d 491 (S.D.N.Y. 2023) ...................................................................... 19

*Rosenwald v. Kimberly Clark Corp.*,
     No. 3:22-cv-04993-LB, 2023 WL 5211625 (N.D. Cal. Aug. 14, 2023) ...................... 6

*Schwarzenegger v. Fred Martin Motor Co.*,
     374 F.3d 797 (9th Cir. 2004) ................................................................................. 4, 7

*Serengeti Express, LLC v. JP Morgan Chase Bank, N.A.*,
     No. 19-cv-5487 (PKC), 2020 WL 2216661 (S.D.N.Y. May 7, 2020) ........................ 18

*Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*,
     118 F.3d 955 (2d Cir. 1997) .................................................................................... 17

*State St. Glob. Advisors Tr. Co. v. Visbal*,
     431 F. Supp. 3d 322 (S.D.N.Y. 2020) ...................................................................... 16

*Travelers Cas. and Sur. Co. v. Dormitory Authority-State of New York*,
     734 F. Supp. 2d 368 (S.D.N.Y. 2010) ...................................................................... 18

*UMG Recordings, Inc. v. Veoh Networks Inc.*,
     No. CV 07-5744 AHM, 2009 WL 334022 (C.D. Cal. Feb. 2, 2009), *aff'd sub
     nom. UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006
     (9th Cir. 2013) ......................................................................................................... 17

*Walden v. Fiore*,
     571 U.S. 277 (2014) .................................................................................................. 9

*Zuffa, LLC v. Paz*,
     No. 22-CV-3258, 2023 WL 8856878 (E.D.N.Y. Dec. 22, 2023) ............................... 17

**State Cases**

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*,
     70 N.Y.2d 382 (1987) ............................................................................................... 18

*TV Tech Managers, Inc. v. Cohen*,
     227 A.D.3d 838, 212 N.Y.S. 3d 647 (2024) .............................................................. 15

**Federal Statutes**

28 U.S.C. § 1391 ......................................................................................................... 1, 12, 13

iv

28 U.S.C. § 1406 .................................................................................................................... 13

**State Statutes**

California Code of Civil Procedures Section 410.10 ..................................................................... 5

**Rules**

FRCP 12 ..................................................................................................................... *passim*

GOODWIN PROCTER LLP
ATTORNEYS AT LAW

SS&C TECH'S MP&A ISO MOTION TO
DISMISS COMPLAINT

CASE NO. 4:24-CV-05064-HSG

1    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2    **I.    <u>INTRODUCTION.</u>**

3        Plaintiff Actian Corporation's ("Actian") flawed attempt to use its misinformed complaint

4    ("Complaint" or "Compl.") to pressure Defendant SS&C Technologies, Inc. ("SS&C Tech" or

5    "Defendant") into renewing an expired OEM (Original Equipment Manufacturer) agreement

6    should be rejected for multiple reasons.

7        *First*, Actian has not demonstrated and cannot sustain its burden to demonstrate that this

8    Court has personal jurisdiction over SS&C Tech.  SS&C Tech is organized under the laws of

9    Delaware and has its principal place of business in Connecticut.  The sole contract between

10   SS&C Tech and Actian is an OEM agreement SS&C Tech negotiated with Actian's predecessor,

11   Pervasive Software Inc. ("Pervasive"), a Texas company, which had no connection to California.

12   The OEM agreement was negotiated and executed outside of California; its choice-of-law

13   provision calls for the application of New York law; and its forum-selection clause designates the

14   courts of New York or Texas—not California—as proper forums.  Asserting personal jurisdiction

15   over SS&C Tech is improper where, as here, SS&C Tech has not availed itself of the benefits and

16   protections of California law.  That Pervasive's successor company (Actian) happened to be a

17   California company is not a sufficient basis to confer personal jurisdiction over SS&C Tech.

18       *Second*, even if the Court had such jurisdiction, in the alternative, the Complaint should be

19   dismissed for improper venue.  Actian cannot meet its burden of showing venue is proper in this

20   District under 28 U.S.C. § 1391(b) because SS&C Tech is not a California resident, the alleged

21   events giving rise to liability occurred outside of California, the operative agreement calls for

22   application of New York law and designates New York or Texas as proper forums, and personal

23   jurisdiction is lacking.

24       *Third*, even if the Court had jurisdiction over SS&C Tech and venue were proper, in the

25   alternative, Actian's Complaint fails to state a claim for relief.  In Count I, Actian has not

26   plausibly alleged breach of contract based on any of its End-User License Agreements (singly, a

27   "EULA" or collectively, the "EULAs") because SS&C Tech is not, and is not alleged to be, a

28   party to any such agreements.  The sole agreement between Actian and SS&C Tech is the OEM

1    agreement.  SS&C Tech was never an end user and never agreed to be bound by any version of

2    the EULA.  This is apparent from not just Actian's failure to plausibly allege SS&C Tech's assent

3    to the EULAs, but also from the fact that the various "exemplary" versions of the EULAs affixed

4    to its Complaint are <u>unsigned</u>.  And in Count II, Actian's allegations are the prototype of

5    conclusory and formulaic recitations of the elements of a claim, which fail to plausibly allege

6    either direct or indirect copyright infringement.  Moreover, Actian's negligence claim (Count III)

7    is inextricably intertwined with Actian's breach of contract claim rendering it barred by the

8    economic loss rule, and impermissibly duplicative of Actian's contract claim.

9        For these reasons, SS&C Tech hereby respectfully requests the Court to dismiss the action

10    (i) pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(2) for lack of personal

11    jurisdiction; or (ii) in the alternative, for improper venue pursuant to FRCP 12(b)(3); or (iii) in the

12    alternative, for failure to state a claim pursuant to FRCP 12(b)(6).

13    **II.    <u>FACTUAL BACKGROUND.</u>**

14        Defendant SS&C Tech, incorporated in Delaware and headquartered in in Connecticut, is

15    a subsidiary of the Nasdaq-listed public company, SS&C Technologies Holdings, Inc., that

16    "develops, markets, sells, distributes and hosts computer programs and systems such as" Skyline,

17    which is a lease management platform, and HiPortfolio, which is a wealth management platform.

18    Compl. ¶ 2; *see* also Declaration of Christen Bremner in Support of Motion to Dismiss ("Bremner

19    Decl.") ¶ 3.  SS&C Tech has roughly 3,025 employees across 36 offices and spread across 31

20    different states.  Bremner Decl. ¶ 4.  Of those, a mere 137 employees, which comprise only

21    around 4.5% of its total employees, are spread across four leased SS&C Tech offices in

22    California.  *Id.*; *see also* Compl. ¶ 7.  SS&C Tech does not own any property in California.

23    Bremner Decl. ¶ 5.

24        On September 24, 2013, SS&C Tech and Pervasive—the then-owner of a database

25    management system known as Pervasive PSQL—"entered into a North American OEM

26    Agreement and, subsequently, Addendum Nos. 1-4" (collectively, the "OEM Agreement").

27    Compl. ¶ 13, Ex. F.  Pervasive was a Texas company located in Austin.  *Id.* Ex. F at p. 1.  SS&C

28    Tech negotiated and signed the OEM Agreement outside of California.  *See* Declaration of

Michael Emmons in Support of Motion to Dismiss ("Emmons Decl.") ¶¶ 4-7.  Pervasive and SS&C Tech agreed that the OEM Agreement "constitute[d] the entire agreement between the parties[.]"  Compl., Ex. F at p. 1.  SS&C Tech and Pervasive agreed that, in the event of a dispute, jurisdiction "will be in the state and federal courts located in New York County, New York and Travis County, Texas."  *Id*., Ex. F at § 15.4.2.  They also agreed that the OEM Agreement itself, as well as all disputes arising thereunder "shall be governed by the laws of the State of New York[.]"  *Id*. at § 15.4.1.

The OEM Agreement established SS&C Tech not as an end user of Pervasive's software, but as an OEM—meaning that SS&C Tech sold product suites to end users which may include Pervasive software.  *See id*. §§ 1.1, 1.2.2, 1.2.2, 1.3.  The OEM Agreement allowed SS&C Tech "to combine the Software with" its Skyline and HiPortfolio products to create and distribute a bundled product defined as the "OEM Product."  Compl., Ex. F at § 1.2.1.  SS&C Tech had the "right to market and distribute the Software to those parties who use the OEM Product for their own internal business purposes or personal use ('End Users') and to third parties ('Resellers') who acquire the OEM Product for remarketing to End Users."  *Id*. at § 1.3.  SS&C Tech was required to "distribute the OEM Product with a copy of Pervasive's end user license agreement (the 'Pervasive EULA')[.]"  *Id*. at § 3.1.  SS&C Tech never agreed to be bound by the EULA itself, nor did it ever use the product as an end user.  Bremner Decl. ¶ 10.  It was the customers of SS&C Tech—the end users—that agreed to be bound by EULAs with Pervasive, not SS&C Tech.  Moreover, SS&C Tech has not, and does not, host the OEM Product on any California-based servers.  Bremner Decl. ¶ 9.  SS&C Tech also does not have a single employee in California that sold the OEM Product or who has any affiliation with the OEM Agreement.  *Id.* at ¶¶ 4, 11.  The only California-based person with any relationship to the OEM Agreement is an outside consultant, not employed by SS&C Tech, and whose relationship with SS&C Tech is governed by Connecticut law.  *Id.* at ¶ 12.

Beginning in September 2015, and starting with Addendum 1 to the OEM Agreement, Actian succeeded Pervasive, its wholly owned subsidiary, as the party to the OEM Agreement.  Compl., Ex. F at Addendum 1.  Thereafter, SS&C Tech began distributing Actian Zen software

under the OEM Agreement (Actian Zen, with Pervasive PSQL, is referred to herein as the "Software").  Bremner Decl. ¶ 7; Compl. ¶¶ 1, 13.  Actian has offices in Texas, and its CEO works for Actian out of the Atlanta, Georgia area.  Emmons Decl. ¶¶ 8-9.  SS&C Tech was not involved with the Actian-Pervasive transaction.  Bremner Decl. ¶ 7.

The OEM Agreement expired on March 20, 2024.  Compl. ¶ 14.  When it was unable to extort from SS&C Tech the renewal terms that Actian wanted, Actian for the first time declared "breach" and initiated this lawsuit.  Bremner Decl. ¶ 13.  Actian now alleges claims for: (1) breach of contract of the OEM Agreement, as well as its EULAs (Compl. ¶¶ 25-31); (2) direct and indirect copyright infringement (*id*. ¶¶ 32-42); and (3) negligence (*id*. ¶¶ 43-48).

## III.    ARGUMENT.

### A.    THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER SS&C TECH, AND THUS, THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO FRCP 12(B)(2).

The Court should dismiss the Complaint pursuant to FRCP 12(b)(2), because the Court lacks personal jurisdiction over SS&C Tech, and Actian has not met and cannot meet its burden to demonstrate either general or specific personal jurisdiction.

### 1.    Legal Standard For Dismissal Under FRCP 12(b)(2).

Where, as here, "a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 800 (9th Cir. 2004); *see also AT&T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) ("As the party seeking to invoke federal jurisdiction, [the plaintiff] has the burden of establishing its existence").  "The court may consider evidence presented in affidavits to assist it in its determination and may order discovery on the jurisdictional issues."  *Doe v. Unocal Corp*., 248 F.3d 915, 922 (9th Cir. 2001), *abrogated on other grounds by Williams v. Yamaha Motor Co. Ltd*., 851 F.3d 1015, 1024 (9th Cir. 2017).

Federal courts "follow state law in determining the bounds of their jurisdiction over persons."  *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014).  Because "California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S.

1   Constitution," the jurisdictional analyses under state law and federal law centers on whether

2   exercising jurisdiction comports with due process.  *Daimler*, 571 U.S. at 125; *see also* Cal. Code

3   Civ. Proc. § 410.10.  Due process imposes on Actian the burden to demonstrate that SS&C Tech

4   has "minimum contacts" with California "such that the maintenance of the suit does not offend

5   traditional notions of fair play and substantial justice."  *Picot v. Weston*, 780 F.3d 1206, 1211 (9th

6   Cir. 2015) (quoting *Int'l Shoe Co. v. State of Washington,* 326 U.S. 310, 316 (1945) (internal

7   quotations omitted)).  "Depending on the strength of those contacts, there are two forms that

8   personal jurisdiction may take: general and specific."  *Picot*, 780 F.3d at 1211.

9          To establish general jurisdiction, a plaintiff must meet the heavy burden of showing that

10  the defendant's contacts with California are "so continuous and systematic as to render the

11  foreign corporation essentially at home in the forum State."  *Ranza v. Nike, Inc.*, 793 F.3d 1059,

12  1069 (9th Cir. 2015) (quoting *Daimler*, 571 U.S. at 133 n.11).  Courts in this district have

13  determined that a defendant is "at home" in the forum state when (1) it is incorporated in the

14  forum; (2) it has its principal place of business in the forum; or (3) if in "exceptional

15  circumstances," it is "essentially at home" in the forum even though it is not incorporated there

16  and does not have its principal place of business there.  *Id.* at 1069-70.[1]

17          For specific jurisdiction, courts in the Ninth Circuit apply the following three-part test:

18      1. The non-resident defendant must purposefully direct his activities or
        consummate some transaction with the forum or resident thereof; or perform
19      some act by which he purposefully avails himself of the privilege of conducting
        activities in the forum, thereby invoking the benefits and protections of its laws;
20
21      2. The claim must be one which arises out of or relates to the defendant's forum-
        related activities; and
22
        3. The exercise of jurisdiction must comport with fair play and substantial
23      justice, i.e. it must be reasonable.

24  *Picot*, 780 F.3d at 1211.  If—and only if—Actian satisfies the burden for the first two prongs,

25

26  _____
    [1] In *Daimler,* the Supreme Court identified *Perkins v. Benguet Consolidated Mining Co.*, 342
27  U.S. 437 (1952), as an example of such an exceptional case.  *See Daimler*, 571 U.S. at 139 n.19.
    In *Perkins*, the Court concluded that a Philippines-based corporation was subject to general
28  jurisdiction in Ohio because the company temporarily relocated its principal place of business to
    Ohio during the Japanese occupation of the Philippines.  *See Perkins*, 342 U.S. at 447-48.

1   "the burden shifts" to SS&C Tech to establish that the exercise of personal jurisdiction over it

2   "would not be reasonable." *Picot*, at 1211-1212, 1215 n.4.

3               **2.      This Court Lacks General Jurisdiction Over SS&C Tech.**

4               Actian comes nowhere close to pleading any of the factors that would demonstrate SS&C

5   Tech is "at home" in California.  To the contrary, Actian's own allegations refute general

6   jurisdiction.  The Complaint alleges that SS&C Tech "is a Connecticut corporation having its

7   headquarters at 80 Lamberton Road, Windsor, CT 06095."  Compl. ¶ 2.  The most that Actian

8   alleges is that SS&C Tech, like many large companies, has certain incidental operations in the

9   state, but this has never been held sufficient to support general jurisdiction.  For example, while

10  Actian alleges that SS&C Tech's maintenance of four offices within California constitutes

11  "systematic and continuous business activities in California" (Compl. ¶ 7), that is not an

12  "exceptional circumstance" to render SS&C Tech "at home" in California.  *See, e.g.*, *Aldrich v.*

13  *Nat'l Collegiate Athletic Ass'n*, 484 F. Supp. 3d 779, 793-94 (N.D. Cal. 2020) (holding that the

14  presence of 58 of NCAA's members and its "physical and economic presence in California" did

15  not confer general jurisdiction over the NCAA); *Corcoran v. CVS Health Corp*., 169 F. Supp. 3d

16  970, 980 (N.D. Cal. 2016) ("Plaintiffs' contention that CVS Health has a substantial number of

17  pharmacies, maintains two distribution centers, and solicits employees in California is not

18  persuasive."); *Rosenwald v. Kimberly Clark Corp*., No. 3:22-cv-04993-LB, 2023 WL 5211625, at

19  *6 (N.D. Cal. Aug. 14, 2023) (holding that the presence of three locations, one manufacturing

20  plant, and various high level executives in California did not subject the defendant to general

21  jurisdiction).  SS&C Tech is a Delaware corporation with 36 offices and employees throughout

22  the nation spread across 31 different states.  *See* Bremner Decl. ¶ 4.  Under Actian's paradigm,

23  SS&C Tech would be subject to general jurisdiction in all 31 states.  But that is a result *Daimler*

24  expressly rejected.  *See* 571 U.S. at 137 (rejecting "the exercise of general jurisdiction in every

25  State in which a corporation engages in a substantial, continuous, and systematic course of

26  business … [as] unacceptably grasping.") (internal quotations omitted).

27              Having offices or operations or doing business in California is not enough.  Many large

28  companies have offices or do business here; only those that are "at home" in California can be

1    generally amenable to suit in the state.  SS&C Tech is not California-based and in no way can be

2    said to be at home in California.  It is not subject to general jurisdiction here.

3                 **3.      This Court Also Lacks Specific Jurisdiction Over SS&C Tech.**

4                        **a.      SS&C Tech Did Not Purposefully Avail Itself Of This Forum.**

5              There is no specific jurisdiction over SS&C Tech because it did not direct any conduct

6    into California or purposefully avail itself of the forum.  Quite to the contrary, it negotiated an

7    OEM Agreement containing a New York choice of law provision with a Texas company, under

8    which it agreed that it could be sued in Texas or New York.  The mere fact that Actian, a

9    California company, later acquired SS&C Tech's contract counterparty is not conduct by SS&C

10   Tech directed into the forum and cannot support personal jurisdiction over SS&C Tech.

11             "The first prong of the [specific jurisdiction] test is analyzed under either a 'purposeful

12   availment' standard or a 'purposeful direction' standard, which are two distinct concepts."  *Mehr*

13   *v. Fed'n Internationale de Football Ass'n*, 115 F. Supp. 3d 1035, 1048 (N.D. Cal. 2015) (citing

14   *Washington Shoe Co. v. A–Z Sporting Goods Inc*., 704 F.3d 668, 672 (9th Cir. 2012)).  Courts

15   apply the "purposeful availment" standard to "claims sounding in contract," and the "purposeful

16   direction" standard to "claims sounding in tort."  *Picot*, 780 F.3d at 1212.  Even so, "it is well

17   established that" the purposeful direction "test applies only to intentional torts, not to …

18   negligence claims[.]"  *Holland America Line Inc. v. Wärtsilä North America, Inc*., 485 F.3d 450,

19   460 (9th Cir. 2007).[2]  Here, all three of Actian's claims sound in contract.  Indeed, even its

20   copyright infringement claim is predicated on allegations that SS&C Tech exceeded the scope of

21   its license under the OEM Agreement.  Thus, the relevant inquiry here is whether SS&C Tech

22   "'purposefully avail[ed]' itself of 'the privilege of conducting activities within the forum State,

23   thus invoking the benefits and protections of its laws.'"  *Mehr*, 115 F. Supp. 3d at 1049 (quoting

24   *Schwarzenegger*, 374 F.3d at 802).  Actian has not (and cannot) established this.

25             Actian's assertion of proper jurisdiction in this forum relies on the conclusory allegation

26   that the forum-selection clause in an unspecified EULA governs here.  *See* Compl. ¶ 6 ("This

27   _____

28   [2] *See also Mehr*, 115 F. Supp. 3d at 1049 (analyzing the negligence claim under purposeful
     availment test).

1    Court has personal jurisdiction over Defendant, and venue is proper in this District, due to a

2    forum selection clause.") (citing Section 12.3 of Version 13 of EULA).  But "[j]urisdictional facts

3    cannot . . . be established by [such] nonspecific, conclusory statements" or allegations.  *Butcher's*

4    *Union Local No. 498, United Food & Commercial Workers v. SDC Inv., Inc.*, 788 F.2d 535, 540

5    (9th Cir. 1986).  As argued at length below (*see infra*, pp. 14-15), Actian alleges no <u>facts</u>

6    demonstrating that SS&C Tech ever entered into any version of the "exemplary" EULAs it

7    identifies, much less the forum-selection clauses therein.  In fact, <u>SS&C Tech never entered into</u>

8    <u>any version of any EULA with Actian or its predecessor</u>.  Bremner Decl. ¶ 10.  The <u>only</u>

9    agreement SS&C Tech entered into was the OEM Agreement, which by its terms "constitute[d]

10   the entire agreement between the parties."  Compl. Ex. F (OEM Agreement) at p. 1.  The terms of

11   the OEM Agreement demonstrate that neither SS&C Tech <u>nor</u> Pervasive (or Actian)

12   "purposefully invoked the benefits and protections of [California's] laws."  *Burger King Corp. v.*

13   *Rudzewicz*, 471 U.S. 462, 481-82 (1985).  Rather, the OEM Agreement is governed by New York

14   law, and contains a forum-selection clause designating the courts of Texas and New York as

15   proper venues.  Actian does not plead and cannot contend that there is any valid legal basis to

16   disregard the parties' express intention for this dispute to be heard by a Texas or New York

17   court—and not by a California court.  *See Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for W.*

18   *Dist. of Tex.*, 571 U.S. 49, 63-64 (2013) (holding that because a forum-selection clause

19   "represents the parties' agreement as to the most proper forum," it "should control except in

20   unusual cases.").

21        Moreover, the OEM Agreement does not reference—nor have any connection with—

22   California.  Both Pervasive and SS&C Tech were non-California entities; Pervasive was

23   headquartered in Austin, Texas, and SS&C Tech is headquartered in Windsor, Connecticut.  *See*

24   Bremner Decl. ¶ 3; Compl. ¶ 2, Ex. F at p. 1.  The OEM Agreement was negotiated and executed

25   entirely outside of California.  *See* Emmons Decl. ¶¶ 4-7.  All of the SS&C Tech employees

26   selling the OEM Product (*i.e.*, those availing themselves of the rights given to SS&C Tech under

27   the OEM Agreement) work outside of California.  *See* Bremner Decl. ¶¶ 4, 11.  And SS&C Tech

28   does not host the OEM Product for any customers on California-based servers.  *Id.* ¶ 9.  Due

1    process ensures that "a defendant will not be haled into a jurisdiction solely as a result of [such]

2    random, fortuitous, or attenuated contacts" as Pervasive's successor corporation, Actian,

3    happening to be located in California. *Burger King*, 471 U.S. at 475 (citation and quotations

4    omitted). And, when analyzing "purposeful availment" or "purposeful direction," courts do not

5    look to actions by the plaintiff; rather, courts "must look to the defendant's 'own contacts' with

6    the forum, not to the defendant's knowledge of [another party's] connections to a forum." *Axiom*

7    *Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1070 (9th Cir. 2017) (quoting *Walden v.*

8    *Fiore*, 571 U.S. 277, 289 (2014)).[3] As a matter of law, moreover, a "contract with an out-of-state

9    party *alone* can[not] automatically establish sufficient minimum contacts in the other party's

10   home forum." *Burger King*, 471 U.S. at 478 (emphasis in original). Rather, courts take a "highly

11   realistic" approach and consider factors such as: "prior negotiations and contemplated future

12   consequences, along with the terms of the contract and the parties' actual course of dealing [to

13   determine] whether the defendant purposefully established minimum contacts within the forum."

14   *Id*. at 479. As discussed above, none of these factors have any connection to California.

15        Actian has not pled and cannot plead that SS&C Tech did <u>anything</u> in California or

16   directed <u>any</u> conduct to the state in such a way and to such an extent that SS&C Tech could fairly

17   have been expected to be haled into court in California. Actian has not sustained its burden of

18   proving facts that would support specific personal jurisdiction over SS&C Tech.

19        **b.    Actian's Claims Do Not Arise Out Of Forum-Related Contacts,
                   Because There Are No Such Contacts.**

20

21        Having failed to allege facts showing that SS&C Tech "purposefully established minimum

22   contacts with" this forum, Actian cannot show that its claims "arise[s] from those" non-existent

23   "contacts." *Doe*, 248 F.3d at 925. The only contacts Actian alleges between California and

24   SS&C Tech are SS&C Tech's maintenance of four offices in California—none of which SS&C

25   Tech owns. *See* Bremner Decl. ¶ 4. In fact, the Complaint identifies no conduct by SS&C Tech

26

27   [3] Perhaps given the clarity of the Court's decisions in *Burger King* and *Walden*, SS&C Tech has
     been unable to find a single decision where a court exercised personal jurisdiction over a
28   defendant merely because the company that acquired the defendant's contracting counterparty
     happened to reside in a court's forum state.

GOODWIN PROCTER LLP
ATTORNEYS AT LAW

9

SS&C TECH'S MP&A ISO MOTION TO          CASE NO. 4:24-CV-05064-HSG
DISMISS COMPLAINT

in or directed to California, and SS&C Tech does not even have a single employee in California

affiliated in any way with the OEM Agreement or the OEM Product. *See id.* ¶¶ 4, 11.

Accordingly, Actian cannot show that its alleged injuries arise out of or relate to SS&C Tech

contacts with California.

### c. The Exercise Of Jurisdiction Over SS&C Tech Would Be Unreasonable.

Even if Actian established purposeful availment and that its claims arise out of SS&C

Tech's contacts with this forum (they do not),[4] Actian cannot establish that the exercise of

jurisdiction over SS&C Tech is reasonable or fair.  Courts consider the following factors to

determine if exercising jurisdiction over a nonresident defendant comports with "fair play and

substantial justice":

> (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487-88 (9th Cir. 1993).  As discussed below,

these factors weigh against exercising personal jurisdiction over SS&C Tech.

(1) The extent of SS&C Tech's purposeful interjection into the forum state's affairs:  As

discussed above, SS&C Tech has not purposefully injected itself into the affairs of California.

*See supra* Section III(A)(3)(a); *see also Core-Vent*, 11 F.3d at 1488 ("[T]he smaller the element

of purposeful interjection, the less is jurisdiction to be anticipated and the less reasonable is its

exercise.") (citations omitted).  No voluntary act in or directed to California is alleged here.  To

the contrary, SS&C Tech expressly intended and specified in the OEM Agreement that this

dispute was to be decided by courts located in New York or Texas, and governed by New York

law.

(2) The burden on SS&C Tech of defending in this forum:  SS&C Tech is located across

---

[4] Because Actian has not demonstrated that "defendant purposefully established minimum contacts with a forum state, and that the claims at issue arise from those contacts," "the Court need not reach the third prong of the specific jurisdiction test."  *See Doe*, 248 F.3d at 925.

the country in Connecticut.  The OEM Agreement was negotiated in Connecticut (SS&C Tech) and Texas (Pervasive), where most of the relevant witnesses are likely located.  It would be burdensome to subject SS&C Tech to jurisdiction here.  That is precisely why the OEM Agreement's controlling forum-selection clause balanced the burden between SS&C Tech and Actian's predecessor by designating New York County (New York) and Travis County (Texas) as the proper forums for disputes.  Asserting jurisdiction in California would be inefficient given that SS&C Tech and its agent witnesses reside in either Connecticut, New York, or Massachusetts, and the alleged events Actian complains of occurred mainly in Connecticut where SS&C Tech is headquartered.  *See Fields v. Sedgwick Associated Risks, Ltd*., 796 F.2d 299, 302 (9th Cir. 1986) ("The site where the events in question took place and most of the evidence is located is usually the most efficient forum."); *see also e.g.* Bremner Decl. ¶ 2 (witness located in Massachusetts); Emmons Decl. ¶¶ 2, 4-5 (witness located in Connecticut and describing witnesses located in Connecticut and New York).

(3) The extent of conflict with the sovereignty of the defendant's state:  Exercising jurisdiction as demanded by Actian conflicts with the sovereignty of New York.  SS&C Tech and Actian's predecessor entered into an agreement specifically opting for any litigation to be governed by New York law in a New York court.  Actian's lawsuit circumvents these bargained for provisions by bringing this suit in California.  In asking a California court to interpret and apply New York law of a contract which designates New York courts as the proper venue to hear such disputes, Actian arguably created a conflict with the sovereignty of New York's courts.

(4) The forum state's interest in adjudicating the dispute: Because the OEM Agreement was entered into between Pervasive (a Texas company) and SS&C Tech (a Connecticut company), and no wrongful acts are alleged to have occurred in this state, California has little interest in adjudicating this case.

(5) The most efficient judicial resolution of the controversy:  For the same reasons stated under factor (2), this factor also favors SS&C Tech.

(6) The importance of the forum to the plaintiff's interest in convenient and effective relief:  While Actian is a California corporation and a California forum would thus be convenient

11

1   to it, a Texas forum would be equally convenient for it.  Indeed, Actian, which acquired

2   Pervasive, has offices in Texas and its CEO resides in Atlanta, which is closer to Texas than

3   California.  Moreover, Actian cannot show that litigating this matter in California will be more

4   effective than New York or Texas.  As detailed above, the majority of the witnesses and events

5   underlying this dispute are outside of California.  Thus, Actian cannot show that a California

6   court is more convenient or effective than a state or federal court in New York or Texas.

7       "In any event, neither the Supreme Court nor [the 9th Circuit] has given much weight to

8   inconvenience to the plaintiff."  *Core-Vent Corp.*, 11 F.3d at 1490.  Obviously, Actian would

9   prefer to maintain this suit here because it is located here.  But, "[a] mere preference on the part

10  of the plaintiff for its home forum does not affect the balancing; indeed, this factor is insignificant

11  in this case."  *Id.*

12      (7) The existence of an alternative forum:  Actian "bears the burden of proving the

13  unavailability of an alternative forum," and cannot meet that burden here.  *Harris Rutsky & Co.*

14  *Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1133-34 (9th Cir. 2003).  SS&C Tech

15  expressly consented to jurisdiction in New York and Texas and Actian has not alleged a single

16  fact showing that it would somehow be "precluded from suing" SS&C Tech in New York or

17  Texas, or that its "claims cannot be effectively remedied there."  *Core-Vent Corp.*, 11 F.3d at

18  1490.  Nor can it make any such showing.

19      **B.    In The Alternative, SS&C Tech Moves To Dismiss Pursuant To FRCP**
        **12(b)(3).**
20

21      Should this Court not dismiss this action under Rule 12(b)(2), it should do so under Rule

22  12(b)(3) because venue is improper in this District.  Although Actian alleges that venue is proper

23  in this District pursuant to the "exemplary" EULA's forum-selection clause (Compl. ¶ 6), and

24  pursuant to 28 U.S.C. § 1391 (Compl. ¶ 9), it is wrong as a matter of law.

25      "Once a defendant challenges venue, the plaintiff has the burden of demonstrating that

26  venue is proper in the chosen district.  A plaintiff asserting multiple claims must establish that

27  venue is proper as to each claim.  In determining whether venue is proper, courts may consider

28  evidence outside the pleadings."  *In re Nissan N. Am., Inc. Litig.*, No. 18-cv-07292-HSG, 2019

WL 4601557, at *3 (N.D. Cal. Sept. 23, 2019) (citations omitted).  The statute that governs the venue of all civil actions brought in federal district courts, 28 U.S.C. Section 1391(b), allows for a civil action to be brought only in: (1) a judicial district in which any defendant resides, if all defendants are residents of the state in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

None of Section 1391(b)'s venue provisions apply here.  Section 1391(b)(1) does not apply because SS&C Tech does not reside in California.  Section 1391(b)(2) does not apply because all of the alleged events giving rise to Actian's claims occurred outside of California, as explained above.  Finally, Section 1391(b)(3) is inapplicable because, as SS&C Tech demonstrated above, this Court lacks general or specific jurisdiction over SS&C Tech.

Under 28 U.S.C. § 1406(a), if the Court finds that venue in this District is improper, "[it] shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  SS&C Tech respectfully requests the Court to exercise its discretion to dismiss the Complaint for improper venue.

### C.    In The Alternative, SS&C Tech Moves To Dismiss Pursuant To FRCP 12(b)(6).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  Therefore, a plaintiff must set forth factual allegations sufficient to allow "for more than sheer possibility that a defendant has acted unlawfully."  *Id*.  Although the Court must assume the truth of the facts alleged, the Court is "not bound to accept as true [] legal conclusion[s] couched as . . . factual allegation[s]."  *Twombly*, 550 U.S. at 555.  A complaint must contain more than just

"threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663.

### 1. Actian Fails to State an Actionable Claim For Breach of Contract With Respect To The EULAs (Count I).

This Court should dismiss Actian's claim that it breached the EULAs because Actian failed to plausibly allege SS&C Tech was bound by them. This is fatal to Actian's claim.

Actian merely alleged that the software at issue is protected by EULAs and then asserts that SS&C Tech agreed to certain provisions in one or more of those EULAs, including the forum selection clause. But Actian's own allegations in other portions of the Complaint (including the exhibits attached thereto) undermine Actian's unsupported theory. Therefore, the Court can—and should—completely disregard such allegations when determining if this claim is adequately pled. *See Lamda Sols. Corp. v. HSBC Bank USA, N.A.*, 574 F. Supp. 3d 205, 216-17 (S.D.N.Y. 2021) (granting motion to dismiss where the "more specific factual allegations in the complaint contradict[ed] Lamda's claim that HSBC expressly consented to issue an assignment of proceeds."); *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145, 151–52 (2d Cir. 2014) ("Although factual allegations of a complaint are normally accepted as true on a motion to dismiss, that principle does not apply to general allegations that are contradicted by more specific allegations in the [c]omplaint.") (internal citation and quotation marks omitted).[5]

Nowhere in Actian's barebones Complaint does it plausibly allege that SS&C Tech ever entered into any version of any EULA with Actian or its predecessor. Instead, it conclusorily alleges that SS&C Tech agreed to "one or more" of five different versions of its EULA, and then attaches various different "exemplary Version[s]" of the EULA to its Complaint. *See* Compl. ¶ 12, Exs. A-E (emphasis added). The failure of Actian to supply any actual EULA entered into by SS&C Tech is not accidental. Critically, as in *Lamda*, Actian's vague and conclusory allegation is contradicted by the fact SS&C Tech did not agree to be bound by any of the various versions of the EULAs affixed to Actian's Complaint, which the Complaint identifies only as "exemplary"

---

[5] The OEM Agreement requires the parties' disputes to be governed by New York law. *See* Agreement § 15.4.1. This Motion thus applies New York law.

1    and not as the actual agreements to which SS&C Tech agreed.  *See id.*  Actian was obligated to

2    identify a specific agreement that binds SS&C Tech and aver that SS&C Tech entered into it.

3    Actian does neither.  It does not know which EULA applies, nor can it identify any that SS&C

4    Tech actually assented to, because it never assented to any.

5         It is not surprising that SS&C Tech never entered into a EULA, because the Complaint

6    makes clear that SS&C Tech is not an "end user" that would be covered by such an agreement.

7    As Actian alleges, SS&C Tech was an OEM—a distributor—of Actian's software, not an "end

8    user downloading or installing the software" (Compl. Exs. A-E at ECF p. 2) to whom the EULAs

9    may actually apply.  *See* Compl. ¶ 2 ("SS&C [Tech] develops, markets, sells, distributes and

10   hosts computer programs and systems").  There is no "End User License Agreement" with SS&C

11   Tech because SS&C Tech was never an end user; it was SS&C Tech's customers who were

12   provided EULAs.  Accordingly, Actian's own allegations negate any breach of the EULAs.  *See*

13   *TV Tech Managers, Inc. v. Cohen*, 227 A.D.3d 838, 841, 212 N.Y.S. 3d 647 (2024) (granting

14   motion to dismiss breach of contract claim where, as here, the plaintiff "failed to allege that [the

15   defendant] signed the agreement").

16   **2.    Actian Fails To State An Actionable Claim For Direct Or Indirect**
     **Copyright Infringement (Count II).**

17

18        Actian's barebones allegations give no notice to SS&C Tech as to what specific

19   copyrighted material it allegedly infringed or how.  Plaintiff itself is not alleged to be an end user

20   of the software, but was permitted to distribute Plaintiff's software under the OEM Agreement.

21   According to Actian, "SS&C [Tech] embeds low-price editions of the Software whose licenses

22   prohibit those non-internal uses and servicing of third parties."  Compl. ¶ 35.  Thus, the face of

23   the Complaint indicates that SS&C Tech distributed licensed versions of the Software to third

24   parties.  What Actian really appears to be saying—though, the Complaint is extremely vague on

25   the topic—is that SS&C Tech's customers exceed the scope of those licenses.  That is not direct

26   copyright infringement by SS&C Tech, and the Complaint is devoid of facts that would support

27   such a claim.

28        Actian's effort to indirectly tag SS&C Tech with alleged copyright infringement of third

parties fails for similar lack of factual content.  As to its claim of "contributory" copyright infringement (Compl. ¶ 35), Actian has not alleged facts showing that SS&C Tech had "actual or constructive knowledge of specific and identifiable infringements of individual items, not [just] a general awareness that there are infringements." *Lefkowitz v. John Wiley & Sons, Inc*., No. 13 Civ. 6414(KPF), 2014 WL 2619815, at *11 (S.D.N.Y. June 2, 2014) (citation and quotation omitted); *see also State St. Glob. Advisors Tr. Co. v. Visbal*, 431 F. Supp. 3d 322, 358 (S.D.N.Y. 2020) ("[M]ore than a generalized knowledge by the defendant of the possibility of infringement is required.") (internal quotations omitted).[6]  As noted, Actian alleges only that SS&C Tech includes "low-price editions of the Software whose licenses prohibit those non-internal uses and servicing of third parties" but alleges no facts to suggest that SS&C Tech knew that any of those third parties violated that license, or how they may have done so.  Moreover, the Complaint does not indicate what specific materials were alleged to have been contributorily infringed, or even by whom, much less that SS&C Tech was aware of it.  "At most, [Actian] has pleaded that [SS&C Tech] had generalized knowledge of the possibility that third parties might infringe [Actian's] copyright. That is insufficient to state a claim for contributory copyright infringement." *Visbal*, 431 F. Supp. 3d at 358.[7]  Actian also failed to allege that SS&C Tech "acted in concert with" any alleged direct infringers. *Id*. at 359.  These deficiencies are fatal to Actian's contributory infringement claim.

Actian also asserts in conclusory fashion that SS&C Tech committed "vicarious infringement" (Compl. ¶ 37) but this fails for similar reasons.  "To state a claim for vicarious infringement, a plaintiff must allege facts that the defendant had the right and

---

[6] *See also Perfect 10, Inc. v. Giganews, Inc*., No. CV11-07098 AHM (SHx), 2013 WL 2109963, at *10 (C.D. Cal. Mar. 8, 2013), *aff'd*, 847 F.3d 657 (9th Cir. 2017) (The plaintiff must show that the defendant "knows that there has been a concrete incident of infringement of a specific copyrighted work."); *Harrington v. Pinterest, Inc*., No. 5:20-cv-05290-EJD, 2021 WL 4033031, at *4 (N.D. Cal. Sept. 3, 2021) ("knowledge for purposes of contributory infringement must be of specific infringing material.") (quoting *Davis v. Pinterest, Inc*., 2021 WL 879798, at *3 (N.D. Cal. Mar. 9, 2021)).

[7] *See also Caribbean Queen, Inc. v. Lee*, No. CV-20-09637 AB (JCx), 2021 WL 3215110, at *5 (C.D. Cal. Mar. 24, 2021) (dismissing the contributory infringement claim where, as here, the complaint was "entirely devoid of any factual allegations that would suggest [defendant] knew, or had reason to know, of the direct infringement of Plaintiff's copyrights[.]")

1  ability to supervise that coalesced with an obvious and direct financial interest in the exploitation

2  of copyrighted materials." *Hartmann v. Popcornflix.com LLC*, 690 F. Supp. 3d 309, 320

3  (S.D.N.Y. 2023). The Complaint's conclusory recitation of the "right and ability to supervise

4  third parties' infringing activity" (Compl. ¶ 37) is insufficient. Courts "have found such

5  allegations to be insufficient, especially in light of the 'cut and paste' approach in which many of

6  [Actian's] pleadings have been drafted without particularized details about [SS&C Tech]." *J & J*

7  *Sports Prods*., No. 18 Civ. 2547 (ARR) (VMS), 2018 WL 7916309, at *7 (E.D.N.Y. Nov. 21,

8  2018); *see also Zuffa, LLC v. Paz*, No. 22-CV-3258, 2023 WL 8856878, at *6 (E.D.N.Y. Dec. 22,

9  2023) (A complaint must contain "specific allegations" that "allege 'nonformulaic facts' to

10  establish [the defendant's] 'right and ability to supervise'").[8]

11         Moreover, Actian does not allege any "direct" financial interest in any third party

12  infringement, but merely an indirect one, through "customers continuing to pay SS&C Tech for

13  support and ongoing service for their OEM Products." Compl. ¶ 38. Such a generalized business

14  interest is not the kind of direct financial benefit necessary to support the claim. *See Softel, Inc. v.*

15  *Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 971 (2d Cir. 1997) (dismissing vicarious

16  infringement claim where, as here, the asserted interest was "too attenuated to establish a

17  sufficiently 'direct' financial interest in the exploitation of copyrighted materials.").[9]

18         Actian fails to state a viable claim of copyright infringement and Count II of the

19  Complaint should therefore be dismissed.

20         **3.    Actian Fails To State An Actionable Claim For Negligence (Count III).**

21         Actian's negligence claim (Count III) should be dismissed because it is barred by the

22  economic loss rule. New York law prohibits efforts to inject concepts of negligence into

---

[8] *See also Caribbean Queen*, 2021 WL 3215110, at *4 ("This element requires more than simply
the demonstration of a right to supervise, but rather that the individual had actual supervisory
power and still failed to stop the infringing conduct. Furthermore, if the right and ability to
supervise is shown, the plaintiff still must demonstrate that the defendant failed to police the
content to the fullest extent.") (internal citations and quotation marks omitted).

[9] *See also UMG Recordings, Inc. v. Veoh Networks Inc*., No. CV 07-5744 AHM (AJWx), 2009
WL 334022, at *6 (C.D. Cal. Feb. 2, 2009), *aff'd sub nom. UMG Recordings, Inc. v. Shelter
Capital Partners LLC*, 718 F.3d 1006 (9th Cir. 2013) (dismissing vicarious infringement claim
where, as here, the "financial benefit is too far removed from the alleged infringement to be
considered a 'direct' financial interest.").

contractual relationships like this one. "New York's economic loss doctrine is a jurisprudential principle that a plaintiff cannot recover in tort for purely economic losses caused by the defendant's negligence." *Travelers Cas. and Sur. Co. v. Dormitory Authority-State of New York*, 734 F. Supp. 2d 368, 378 (S.D.N.Y. 2010). The "general rule under New York law is that economic loss is not recoverable under a theory of negligence[.]" *Computech Int'l, Inc. v. Compaq Computer Corp.*, No. 02–CV–2628 (RWS), 2004 WL 1126320, at *10 (S.D.N.Y. May 21, 2004); *see also In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 431 (S.D.N.Y. 2017), *modified on reconsideration*, 2017 WL 3443623 (S.D.N.Y. Aug. 9, 2017) (holding that the economic loss rule "indisputably applies to claims sounding in negligence"). Here, Actian's negligence claim is based on purely economic losses; there is no factual allegation that it suffered any physical damages. *See* Compl. ¶ 48 (alleging harms for "money, and other resources in efforts to investigate"). Therefore, it is legally barred and must be dismissed.

Finally, Actian's negligence claim must also be dismissed because it is not independent of its breach of contract claim; its negligence claim is, in effect, a breach of contract claim masquerading as a tort claim. This renders the negligence claim fatally deficient under New York law for two inter-related reasons. *First*, "[i]t is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389 (1987). The Complaint is wholly devoid of any such allegations—it focuses entirely on SS&C Tech's purported contractual obligations. Therefore, an affirmative element of the negligence claim (a duty to the plaintiff) is missing and this claim must fail. *Second*, "[i]t is well established that where the basis of a party's claim is a breach of solely contractual obligations, such that the plaintiff is merely seeking to obtain the benefit of the contractual bargain through an action in tort, the claim is precluded as duplicative." *Fixed Income Shares: £Series M v. Citibank N.A.*, 130 F. Supp. 3d 842, 857 (S.D.N.Y. 2015) (internal quotations and citation omitted); *see also Serengeti Express, LLC v. JP Morgan Chase Bank, N.A.*, No. 19-cv-5487 (PKC), 2020 WL 2216661, at *3 (S.D.N.Y. May 7, 2020) (dismissing negligence claim where, as here, the plaintiffs' negligence claim "implicate[d] the explicit and implicit obligations of the parties under

the [contract] rather than any independent legal duty."); *Rider v. Uphold HQ Inc*., 657 F. Supp. 3d 491, 502 (S.D.N.Y. 2023) ("Plaintiffs' negligence claim must be dismissed as duplicative of their contract claim. The plaintiffs have identified no legal duty independent of the parties' contractual relationship.").  The failures that Actian alleges constituted negligence are clearly dependent on and arise out of a contractual relationship.  *See, e.g*., Compl. ¶ 44 ("SS&C [Tech] owed a duty of care to Actian to review and properly comply with the Agreements, and thereafter to report to Actian, pay Actian, submit to audits by Actian and in all other respects comply with the Agreements").  Whatever rights Actian may have here are governed by the written OEM Agreement that covers the relevant subject matter.  Tort law cannot be used to expand or rewrite the parties' bargain.

## IV.    <u>CONCLUSION.</u>

For the foregoing reasons, this Court should grant SS&C Tech's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction.  In the alternative, this Court should grant SS&C Tech's Rule 12(b)(3) motion to dismiss for improper venue.  Lastly and in the alternative, this Court should grant SS&C Tech's Rule 12(b)(6) motion to dismiss Count I (with respect to the EULAs), Count II, and Count III for failure to state a claim.

Dated: October 29, 2024                         Respectfully submitted,


By: */s/ Nicole L. Chessari*
NICOLE L. CHESSARI
*NChessari@goodwinlaw.com*
JEFFERY A. SIMES (*Pro Hac Vice*)
*JSimes@goodwinlaw.com*
FARAZ BEHNAMJOU
*FBehnamjou@goodwinlaw.com*
NICHOLAS C. WILEY
*NWiley@goodwinlaw.com*
**GOODWIN PROCTER LLP**

Attorneys for Defendant
SS&C TECHNOLOGIES, INC.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of California by using the CM/ECF system on October 29, 2024. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed on October 29, 2024.

*/s/ Nicole L. Chessari*
Nicole L. Chessari

Goodwin Procter LLP
Attorneys at Law

SS&C TECH'S MP&A ISO MOTION TO
DISMISS COMPLAINT

Case No. 4:24-cv-05064-HSG