1
2  RYAN E. HATCH (SBN 235577)
   ADAM J. REIS (SBN: 354712)
3  **HATCH LAW PC**
   13323 Washington Blvd., Suite 302
4  Los Angeles, CA 90066
   Telephone: 310-279-5076
5  ryan@hatchlaw.com

6  ALAN D. SEGE (SBN 177350)
   **ALAN SEGE, ESQ. PC**
7  13323 Washington Blvd., Suite 302
   Los Angeles, CA 90066
8  Telephone: 310-957-3301
   alan@alansege.com
9
   *Attorneys for Plaintiff Actian Corporation*
10

11             **UNITED STATES DISTRICT COURT**

12        **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

13  ACTIAN CORPORATION,                    CASE NO. 4:24-cv-05064-HSG

14        Plaintiff,                        **PLAINTIFF ACTIAN
                                            CORPORATION'S OPPOSITION TO
15  v.                                      DEFENDANT SS&C TECHNOLOGIES,
                                            INC.'S MOTION TO DISMISS
16  SS&C TECHNOLOGIES, INC.                 COMPLAINT**

17        Defendants.                       **Jury Trial Demanded**

18                                          Assigned Judge: Haywood S. Gilliam, Jr.

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.    FACTUAL BACKGROUND .............................................................................. 3

    A.    The Undisputed Facts ............................................................................... 3

    B.    The Disputed Facts ................................................................................... 5

III.    LEGAL STANDARDS ........................................................................................ 6

    A.    Application of a Forum Selection Clause ................................................ 6

    B.    Motion to Dismiss for Lack of Personal Jurisdiction ............................. 7

    C.    Motion to Dismiss for Improper Venue ................................................... 7

    D.    Motion to Dismiss for Failure to State a Claim ...................................... 8

IV.    ARGUMENT ....................................................................................................... 8

    A.    Jurisdiction and Venue are Proper Because of the EULAs' Forum Selection Clauses ................................................................................... 9

        1.    The Claims are Subject to the EULAs' Mandatory Forum Selection Clauses ..... 9

        2.    SS&C is Bound by the EULAs' Forum Selection Clauses ................... 11

    B.    Personal Jurisdiction Exists Independent of the Forum Selection Clauses ............ 13

        1.    Specific Personal Jurisdiction ............................................................ 13

        2.    General Personal Jurisdiction ............................................................. 16

        3.    SS&C's Arguments to the Contrary Fail .............................................. 16

    C.    Venue is Proper in the Northern District of California ......................... 17

    D.    SS&C's Alternative Motion under 12(b)(6) Fails. ............................... 18

        1.    Actian Has Stated a Claim for Breach of Contract ............................ 18

        2.    Actian Has Stated a Claim for Copyright Infringement ..................... 19

    E.    Actian Has Stated a Claim for Negligence ............................................ 22

    F.    In the Alternative, the Court Should Order Jurisdictional Discovery and Allow Actian Should be Granted Leave to Amend ............................ 24

V.    CONCLUSION .................................................................................................. 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**

**Cases**

*Adobe Sys., Inc. v. Childers*,
  2011 U.S. Dist. LEXIS 14534 (N.D. Cal. Feb. 14, 2011) .................................................. 8

*Ashcroft v. Iqbal*,
  556 U.S. 662(2009) .................................................................................................................. 8

*Atl. Marine Constr. Co. Inc. v. U.S. Dist. Court for W. Dist. of Tex.*,
  571 U.S. 49 (2013) .................................................................................................................. 9

*August Image, LLC v. Trend Hunter Inc.*,
  2023 U.S. Dist. LEXIS 162807 (C.D. Cal. Sep. 12, 2023) ................................................. 21

*Ayla, Ltd. Liab. Co. v. Alya Skin Pty. Ltd.*,
  11 F.4th 972 (9th Cir. 2021) ................................................................................................ 13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................................ 8

*Berman v. Freedom Fin. Network, LLC*,
  30 F.4th 849 (9th Cir. 2022) ................................................................................................ 12

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ................................................................................................................ 9

*Chan v. Soc'y Expeditions*,
  39 F.3d 1398 (9th Cir. 1994) .................................................................................................. 6

*Craigslist, Inc. v. Naturemarket, Inc.*,
  694 F. Supp. 2d 1039 (N.D. Cal. 2010) ................................................................................ 6

*Crawford v. Beachbody, LLC*,
  2014 U.S. Dist. LEXIS 156658 (S.D. Cal. Nov. 5, 2014) ................................................... 13

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ......................................................................................................... 7, 16

*Dole Food Co., Inc. v. Watts*,
  303 F.3d 1104 (9th Cir. 2002) ........................................................................................ 16, 17

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991) .............................................................................................................. 19

*Foman v. Davis*,
  371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962) .................................................................... 25

*Gay v. Facebook, Inc.*,
  2016 U.S. Dist. LEXIS 194149 (N.D. Cal. Oct. 19, 2016)...........................................3, 8, 19

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  564 U.S. 915 (2011) ................................................................................................................7

*Gregg v. Camp*,
  2024 U.S. Dist. LEXIS 91208, at *5 (N.D. Cal. May 21, 2024) ...........................................25

*Hanson v. Denckla*,
  357 U.S. 235 (1958) ................................................................................................................7

*Heller Financial*,
  883 F.2d 1286 (7th Cir. 1989)................................................................................................6

*Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*,
  485 F.3d 450 (9th Cir. 2007)..................................................................................................9

*Jockey Int'l, Inc. v. M/V "Leverkusen Express"*,
  217 F. Supp. 2d 447 (S.D.N.Y. 2002 .....................................................................................8

*Kaia Foods, Inc. v. Bellafiore*,
  70 F. Supp. 3d 1178 (N.D. Cal. 2014) ....................................................................................7

*M/S Bremen v. Zapata Off-Shore Co.*,
  407 U.S. 1 (1972) .................................................................................................................6, 9

*MDY Indus., LLC v. Blizzard Entm't, Inc.*,
  629 F.3d 928 (9th Cir. 2010)..................................................................................................20

*Morrill v. Scott Fin. Corp.*,
  873 F.3d 1136 (9th Cir. 2017)..................................................................................................7

*Rey v. Rey*,
  666 F. App'x 675 (9th Cir. 2016) ................................................................................7, 10, 11

*SEC v. Ross*,
  504 F.3d 1130 (9th Cir. 2007)..................................................................................................6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ................................................................................................................8

*Union Asset Mgmt. Holding AG v. SanDisk LLC*,
  227 F. Supp. 3d 1098 (N.D. Cal. 2017) ................................................................................25

*Zuffa, LLC v. Tanner*,
  2024 U.S. Dist. LEXIS 134325 (C.D. Cal. June 11, 2024)....................................................21

iii

1

**Statutes**

2   28 U.S.C. § 1391(b)(2) ............................................................................................. 18

3   28 U.S.C. § 1391(c)(2) ............................................................................................. 17

4   28 U.S.C. § 1406(a) ................................................................................................... 7

5

**Rules**

6   28 U.S.C. § 1391(b) ................................................................................................... 8

7   Fed. R. Civ. P. 12(b)(2) .......................................................................................... 1, 9

8   Fed. R. Civ. P. 12(b)(3) .................................................................................... 1, 7, 8, 9

9   Fed. R. Civ. P. 12(b)(6) .............................................................................................. 1

10  Fed. R. Civ. P. 8(a)(2) ............................................................................................... 8

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF ACTIAN CORPORATION'S OPPOSITION TO DEFENDANT
SS&C TECHNOLOGY INC.'S MOTION TO DISMISS

1    Plaintiff, Actian Corporation ("Plaintiff" or "Actian"), hereby opposes SS&C

2    Technologies, Inc.'s ("Defendant" or "SS&C") Motion to Dismiss Complaint, Dkt. No. 25

3    ("MTD").

4    **I.    <u>INTRODUCTION</u>**

5        Defendant has moved to dismiss the case under Federal Rules of Civil Procedure

6    12(b)(2) (for improper venue), 12(b)(3) (for lack of personal jurisdiction), and, in the

7    alternative, 12(b)(6) (for failure to state a claim).  The bulk of Defendant's motion must fail

8    for the simple reason that every claim in the case is subject to a written mandatory forum

9    selection clause designating the Northern District of California as the exclusive venue.  *See*

10   Dkt. No. 1-2 (v13 EULA) § 12.3; Dkt. No. 1-5 (v14 EULA) § 11.3.

11       This case arises from hundreds of agreements between Actian, SS&C, and SS&C's

12   customers.  Each time a party installs and uses Actian's Software it assents to the End User

13   License Agreements ("EULAs").  *E.g.*, Dkt. No. 1-2 at 1; Dkt. No. 1-5 at 1.  Each time SS&C

14   installs or uses the Software, it assents to Actian's EULAs. Dkt. No. 1-7 ("OEM Agreement")

15   §§ 1.3, 3.1 (last sentence). Each time SS&C distributes the Software, it must do so subject to

16   the EULAs.  *Id.* § 3.1.  SS&C may only host the Software if expressly authorized by the

17   EULAs. *Id.* § 1.3.  The EULAs for versions 13 and 14 of the Software contain the mandatory

18   forum selection clause, and thus SS&C and its customers have consented to jurisdiction in the

19   Northern District hundreds—if not thousands—of times.  To contend otherwise, SS&C must

20   convince the Court to ignore this vast majority of the agreements in this case.

21       Tellingly, the core of SS&C's motion is its erroneous ***factual*** contention that "SS&C

22   Tech was never an end user and never agreed to be bound by any version of the EULA."

23   MTD at 2.  But SS&C's factual contention is simply false.  SS&C itself is an end user, and has

24   been an end-user numerous times.  It has acquired hundreds of licenses to Actian's software

25   for its own use, it has admitted that it installed and used versions 13 and 14 of Actian's

26   software, and it used each version of Actian's software hundreds or thousands of times.  Gu

27   Decl. ¶¶ 13-14 (purchasing licenses), 18-19 (admitting use), 23 (hosting version 13 of the

28

1  software).  In doing so SS&C agreed to each of Actian's EULAs hundreds or thousands of

2  times.  *Id.* ¶ 25.

3      SS&C's error is fatal to its Rule 12(b)(2) and Rule 12(b)(3) grounds.  Under California

4  law, every claim in the case is subject to the forum selection clause because each claim

5  requires the Court to assess SS&C's compliance with the EULAs.  *First,* SS&C breached its

6  agreements by failing to obtain the required Vx Server Edition licenses mandated by the

7  EULAs and by violating the OEM Agreement's requirement that SS&C "shall not . . . use the

8  Software to host applications for third parties" except "as expressly authorized in the

9  Pervasive EULA."  Dkt. No. 1 (Complaint) ¶ 18 (quoting Dkt. No. 1-7 (OEM Agreement) §

10  1.3).  *Second*, SS&C copied and distributed the copyrighted Software without the licenses

11  required by the EULAs—infringing and causing others to infringe Actian's copyrights.  *Third*,

12  SS&C's negligence comprises its failure to exercise due care in understanding its obligations

13  and identifying the correct licenses.  Thus, this Court is the proper venue for all claims.

14      SS&C's alternative grounds under 12(b)(6) fare no better.  As to the contract claim,

15  SS&C merely repeats its erroneous contention that it never agreed to the EULAs, which is

16  both incorrect and insufficient to dismiss the claim.  Next, SS&C's moves to dismiss the

17  copyright claim for lack of specificity, but Actian has provided detailed allegations that SS&C

18  used and distributed the Software without the licenses required by the EULAs and outside of

19  the scope of the OEM Agreement—and continued to do so after the expiration of the OEM

20  Agreement.  Finally, SS&C argues that Actian's negligence claim is duplicative of its contract

21  claim and barred by New York's economic loss doctrine.  But the negligence claim arises not

22  from breach, but from SS&C's refusal to review and understand its obligations under the

23  OEM Agreement or the EULAs, and its total failure to exercise adequate controls over its use

24  and distribution of the Software—resulting in both economic and non-economic harms to

25  Actian.  And, in any event, New York's economic loss doctrine does not apply to a software

26  distribution agreement, like the OEM Agreement. Thus, SS&C thus presents no basis to

27  dismiss any part of any of the claims under Rule 12(b)(6).

28

1    **II.    FACTUAL BACKGROUND**

2        **A.    The Undisputed Facts**

3        The following facts were alleged in the Complaint or contained in its exhibits, have not

4    been rebutted by SS&C's affidavit evidence, and are and remain plausible.  Thus, they must be

5    accepted as true for purposes of deciding this motion.  *Gay v. Facebook, Inc.*, 2016 U.S. Dist.

6    LEXIS 194149, at *2 (N.D. Cal. Oct. 19, 2016).

7        Defendant SS&C develops, markets, and sells products that incorporate and rely upon

8    Actian's proprietary Zen (previously known as PSQL) computer programs ("Actian Software.")

9    Dkt. No. 1 ¶¶ 1, 11.  SS&C markets, sells and distributes one software product, Skyline, as "a

10   dynamic, powerful lease management and accounting system designed to increase productivity,

11   occupancy and profitability for residential and commercial property owners and managers."  *Id.*

12   ¶ 2.  SS&C markets, sells and distributes another software product, HiPortfolio as "[a]n award-

13   winning investment accounting and asset servicing solution fit for complex local, regional and

14   global processing and tax requirements trusted by TPAs and asset managers from 35+

15   countries."  *Id.*  Skyline and HiPortfolio (together the "OEM Products") rely on Actian's

16   Software to receive, store, analyze and output data.  *Id.* ¶¶ 3, 14.

17       Each version of the Software is protected by one or more of Actian's EULAs.  *Id.* ¶ 12.

18   Under their terms, a party agrees to be bound by Actian's EULAs when it uses or installs the

19   Software.  *E.g.*, Dkt. No. 1-2 at 1; Dkt. No. 1-5 at 1.  In addition to the EULAs, Actian and

20   SS&C entered into the North American OEM Agreement (the "OEM Agreement") on

21   September 24, 2013.  Dkt. No. 1 ¶ 13; Dkt. No. 1-7 at 10.  The OEM Agreement allowed SS&C

22   to sell the OEM Products bundled with editions of the Software.  Dkt. No. 1 ¶ 13; Dkt. No. 1-7

23   at 10.  SS&C was to act as a distributor under the OEM Agreement, which required that SS&C

24   "commit to an Annual Projected Volume ("APV") for each year of the Agreement.  Dkt. No. 1-

25   7 § 4.6.  SS&C was obligated to sell the Software only with licenses under the appropriate

26   EULA.  Dkt. No. 1-7 §§ 1.3, 3.1; *see also* Dkt. No 25-1 ("Bremner Decl.") ¶ 10.  SS&C had no

27

28

PLAINTIFF ACTIAN CORPORATION'S OPPOSITION TO DEFENDANT
SS&C TECHNOLOGY INC.'S MOTION TO DISMISS

1  rights to use or distribute the Software outside of the scope of the relevant EULA.  Dkt. No. 1-7

2  § 1.3.

3      The OEM Agreement also provides that if SS&C "is the End User, then the terms of the

4  Pervasive EULA[1] will apply to OEM," where an End User is a party who uses the OEM

5  Product "for their own internal business purposes or personal use."  Dkt. 1-7 § 3.1.  Actian

6  provides SS&C with licenses to each the Software for SS&C's own internal business purposes.

7  For example, in Attachment 1 to the OEM agreement, SS&C contracted for 140 licenses the

8  Software for "internal use Only."  Dkt. No. 1-7 at 10.  Of these licenses, at least 60 were

9  earmarked for SS&C's "Support team," "Sales team," Test Lab/Q&A Team," and

10  "Development Team."  *Id.*  SS&C contracted for additional 140 "internal use Only" licenses for

11  each subsequent version of the Software.  Dkt. No. 1-7 at 11, 21, 31, 41, 51.

12      The EULAs provide restrictions on the use of the Software including, relevant here,

13  limitations on the use of the Software to host or service third parties. Dkt No. 1 ¶ 18-20.

14  Although the parties dispute whether SS&C is bound by the EULAs, there is no dispute that it is

15  bound by the OEM Agreement, which provides:  "Except as ***expressly authorized in the***

16  ***Pervasive EULA*** (as defined below), OEM shall not, and shall not authorize its Resellers and

17  End Users to, rent, lease, or time share the Software or documentation or any part thereof, or

18  use the Software to host applications for third parties or to provide service bureau, time-sharing

19  or other computer services to third parties."  Dkt. No. 1-7 § 1.3 (emphasis added).  Under the

20  relevant terms of the EULAs, SS&C or its customers wish to host the Software for third parties,

21  they must purchase a premium license called a Vx Server Edition license.  Dkt No. 1 ¶ 18-20

22      Despite these express prohibitions, SS&C hosted the Software for its customers, and

23  provided OEM Products to its customers that enabled them to host the Software for further

24  third-parties—all without purchasing Vx Server Edition Licenses.  *Id.* ¶ 22-23.  SS&C refused

25  to purchase the required licenses, and it deliberately distributed the Software without the

26

27  ---
[1] The Pervasive EULA is the version of Actian's EULA for a given version of its Software as provided to SS&C by Actian.  Dkt. 1-7 § 3.1.

28

1    required license to its customers.  *Id.*  In addition, SS&C provided its customers with the

2    cheapest ***single-user*** licenses for the Software, despite designing OEM Products whose only

3    purpose is to be used by ***many simultaneous users***.

4        The OEM Agreement expired on March 20, 2024.  *Id.* ¶ 14.  Since its expiration, SS&C

5    has had no right whatsoever to distribute, reproduce, or host Actian's Software.  *Cf. id.* ¶ 13.

6    Nonetheless, it continues to do so.  *Id.* ¶ 14, 23

7        When it first learned of SS&C's use of the Software in violation of the EULAs, and

8    distribution without adequate licenses, Actian sought to address the matter amicably.  *Id.* ¶ 22-

9    23.  SS&C stonewalled and denied, and ultimately Actian was constrained to file this lawsuit.

10       **B.    The Disputed Facts**

11       SS&C filed a declaration in support of its Motion to Dismiss contesting certain facts in

12   the Complaint.  Chief among them, "SS&C Tech never agreed to be bound by the Pervasive

13   EULA[2] itself" and SS&C "has never used Pervasive's/Actian's products as an end user" and

14   Bremner Decl. ¶ 10.  This is simply false.

15       When the parties entered into the OEM Agreement, they expressly contemplated that

16   SS&C would be ***both*** a distributor and an end user.  Dkt. No. 1-7 § 3.1 ("OEM shall distribute .

17   . . If OEM is the End User . . . .").  And it has been both.  SS&C has purchased hundreds of

18   licenses for its own internal use, which use is subject to the terms of the then-current EULA. Gu

19   Decl. ¶ 13-16.  On five occasions—September 30, 2013, September 29, 2015, September 31,

20   2016, and May 15, 2018, June 29, 2021—SS&C purchased over one hundred licenses to the

21   Software for "internal use ONLY."  Dkt. No. 1-7 at 11, 21, 31, 41, 51; *see id.*  These licenses

22   were purchased "for ***internal use only***."  Dkt. No. 1-7 at 11, 21, 31, 41, 51 (emphasis added).

23   They were given to SS&C's "Support team," "Sales team," "Test Lab/Q&A team," and

24   "Development team" as well as several of SS&C's resellers.  Dkt. No. 1-7 at 11, 21, 31, 41, 51.

25

26

27   [2] The parties use the term "Pervasive EULA" to refer to the then-current version of the EULA
     for the Software.  *See* Dkt. No 25-1 (Bremner Decl.) ¶ 10; Agreement § 3.1.

28

SS&C has also admitted that it installs and uses the Software. For example, Actian provides support to SS&C for the versions of the Software that it uses for its own internal business purposes. Gu Decl. ¶¶ 18-19. While requesting support, SS&C told Actian that it installed and used versions 13 and 14 of the Software. Gu Decl. ¶¶ 18-19; *id.* at Exhibit C.

Likewise, in response to an audit request, SS&C admitted that it has installed and is hosting version 13 of the Software as part of its Skyline product. Gu Decl. ¶ 23; *id.* at Exhibit E. SS&C cannot host the software without first installing it. *Id.*

In each of the above instances, SS&C used or installed the Software with full knowledge of the applicable EULAs. *Id.* ¶¶ 16, 25. Thus, SS&C has agreed to be bound by the terms of the EULAs—including the v13 EULA and v14 EULA. *Id.* Moreover, when SS&C uses the Software for its own internal business purposes, it is subject to the EULA terms under the provisions of the OEM Agreement. Dkt. No. 1-7 §§ 1.3, 3.1.

## III. **LEGAL STANDARDS**

### A.    **Application of a Forum Selection Clause**

"In the commercial context, parties, for business or convenience reasons, frequently stipulate in advance to submit their controversies for resolution within a particular jurisdiction." *Chan v. Soc'y Expeditions*, 39 F.3d 1398, 1406 (9th Cir. 1994) (citing *Heller Financial,* 883 F.2d 1286, 1290 (7th Cir. 1989)). "Forum selection clauses . . . are presumptively valid." *Craigslist, Inc. v. Naturemarket, Inc*., 694 F. Supp. 2d 1039, 1052 (N.D. Cal. 2010) (citing *M/S Bremen v. Zapata Off-Shore Co*., 407 U.S. 1, 10 (1972)).

Accepting a forum selection clause evidences consent to personal jurisdiction in that forum. *Craigslist*, 694 F. Supp. 2d at 1052 (citing *SEC v. Ross*, 504 F.3d 1130, 1149 (9th Cir. 2007)). Thus, "a forum selection clause alone [can] confer personal jurisdiction." *Chan v. Soc'y Expeditions*, 39 F.3d at 1406. "The party disputing the validity of a forum selection clause bears the burden of proving the clause is unenforceable." *Craigslist*, 694 F. Supp. at 1052 (internal citation omitted). Where it fails to do so "the Court may properly exercise personal jurisdiction over" the defendants. *Id.*

1    A forum selection clause directed to claims "arising under" applies to any claim that

2  "cannot be adjudicated without analyzing whether the parties were in compliance with the

3  agreement containing the clause."  *See Rey v. Rey*, 666 F. App'x 675, 676 (9th Cir. 2016).

4    **B.    Motion to Dismiss for Lack of Personal Jurisdiction**

5    A court may exercise specific jurisdiction over a defendant if the cause of action

6  "arises out of" or has a "substantial connection" with the defendant's contacts with the

7  state. *Hanson v. Denckla*, 357 U.S. 235, 252 (1958); *see also Goodyear Dunlop Tires*

8  *Operations, S.A. v. Brown*, 564 U.S. 915, 923-25 (2011).  To determine specific

9  jurisdiction, the Ninth Circuit employs a three-part test:  "(1) The non-resident defendant

10  must purposefully direct his activities or consummate some transaction with the forum or

11  resident thereof; or perform some act by which he purposefully avails himself of the

12  privilege of conducting activities in the forum, thereby invoking the benefits and

13  protections of its laws; (2) the claim must be one which arises out of or relates to the

14  defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with

15  fair play and substantial justice, i.e. it must be reasonable." *Morrill v. Scott Fin. Corp.*, 873

16  F.3d 1136, 1142 (9th Cir. 2017).  A court has general jurisdiction over a defendant where

17  the contacts with the forum are "so 'continuous and systematic' as to render them

18  essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)

19  (quoting *Goodyear*, 564 U. S., at 919).

20    **C.    Motion to Dismiss for Improper Venue**

21    "A party may bring a motion to dismiss an action for improper venue pursuant to

22  Federal Rule of Civil Procedure 12(b)(3)." *Kaia Foods, Inc. v. Bellafiore*, 70 F. Supp. 3d

23  1178, 1183 (N.D. Cal. 2014).  If venue is improper, the Court "shall dismiss, or if it be in

24  the interest of justice, transfer such case to any district or division in which it could have

25  been brought." 28 U.S.C. § 1406(a). Plaintiff bears the burden of showing that venue is

26  proper. *See Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir.

27  1979). When the plaintiff asserts multiple claims, it must establish that venue is proper as

28

1  to each claim. *Adobe Sys., Inc. v. Childers*, 2011 U.S. Dist. LEXIS 14534, at *7 (N.D. Cal.

2  Feb. 14, 2011). However, where venue exists for the principal claim, federal courts will

3  also adjudicate closely related claims, even if there is no independent source of venue for

4  the related claims. *Id.*  In considering a 12(b)(3) motion, courts may review materials

5  outside of the pleadings. *See Jockey Int'l, Inc. v. M/V "Leverkusen Express"*, 217

6  F.Supp.2d 447, 450-51 (S.D.N.Y. 2002).

7      Venue is proper under 28 U.S.C. Section 1391(b) in " (1) a judicial district in which

8  any defendant resides, if all defendants are residents of the State in which the district is

9  located; (2) a judicial district in which a substantial part of the events or omissions giving

10  rise to the claim occurred, or a substantial part of property that is the subject of the action is

11  situated; or (3) if there is no district in which an action may otherwise be brought as

12  provided in this section, any judicial district in which any defendant is subject to the court's

13  personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b).

14      **D.    Motion to Dismiss for Failure to State a Claim**

15      Federal Rule of Civil Procedure 8 requires "a short and plain statement of the claim

16  showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[C]ourts must

17  consider the complaint in its entirety." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551

18  U.S. 308, 322 (2007).   A complaint need not contain "detailed factual allegations," but it

19  must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.

20  Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  "A claim has facial plausibility when

21  the plaintiff pleads factual content that allows the court to draw the reasonable inference

22  that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,

23  678 (2009).  "On a motion to dismiss, all allegations of material fact are taken as true and

24  construed in the light most favorable to the non-movant."  *Gay*, 2016 U.S. Dist. LEXIS

25  194149, at *2.

26  **IV.  ARGUMENT**

27

28        8

1      Jurisdiction and venue are proper, and Actian has adequately pleaded each of the causes

2  of action in its Complaint.  The MTD should thus be denied.

3          **A.      Jurisdiction and Venue are Proper Because of the EULAs' Forum**

4                  **Selection Clauses**

5      Venue is proper and the Court has personal jurisdiction over SS&C because of the

6  forum selection clauses in the v13 EULA and v14 EULA, which identifying the Northern

7  District of California as the exclusive federal venue for the case.  In addition, the Court has

8  specific jurisdiction over SS&C because this suit arises directly from its contracts, illicit

9  sales, and illicit reproduction of copyrighted works in California.  Finally, SS&C is

10 generally at home in California because with a substantial footprint comprising several

11 formerly independent California-based companies.

12         **1.      The Claims are Subject to the EULAs' Mandatory Forum Selection**

13                 **Clauses**

14     Both personal jurisdiction and venue are proper pursuant to the forum selection clauses

15 in the v13 EULA and the v14 EULA.  *See Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*, 485

16 F.3d 450, 458 (9th Cir. 2007)  ("[A] forum selection clause may give rise to waiver of

17 objections to personal jurisdiction, provided that the defendant agrees to be so bound."); *see*

18 *also Burger King Corp.*, 471 U.S. at 473 n.14 (noting that personal jurisdiction is "waivable"

19 through "a variety of legal arrangements" including forum selection clauses). SS&C has agreed

20 to be bound by the terms of the v13 EULA and the v14 EULA.  *See* Section II.B supra, Section

21 IV.A.2 infra.  The EULAs' forum selection clause is thus binding and the claims in this case fall

22 under its scope.  This is independently dispositive of the MTD's 12(b)(2) and 12(b)(3) grounds.

23 *See M/S Bremen*, 407 U.S. at 15 (A forum selection clause "should control absent a strong

24 showing that it should be set aside."); *Atl. Marine Constr. Co. Inc. v. U.S. Dist. Court for W.*

25 *Dist. of Tex.*, 571 U.S. 49, 66 (2013) ("In all but the most unusual cases, therefore, 'the interest

26 of justice' is served by holding parties to their bargain.").

27     The v13 EULA and v14 EULA provide that the Northern District of California is the

28

1   exclusive federal jurisdiction for disputes arising out of relating to their terms:

2           Governing Law and Venue. Any action related to this Agreement shall be governed
            by California law and controlling U.S. federal law, and the choice of law rules of
3           any jurisdiction shall not apply. . . . ***All disputes arising out of or relating to this
            Agreement shall be brought exclusively in the federal courts located in the
4           Northern District of California or the state courts located in Santa Clara County,
            California, and the parties agree to submit to the exclusive jurisdiction and venue
5           of such courts*** . . . .

6   Dkt. 11-2 ¶ 12.3 (emphasis added); Dkt. No. 1-5 ¶ 11.3; Dkt. No. 1-6 ¶ 11.3.

7           Because the v13 EULA and v14 EULA expressly provide that they should be "shall be

8   governed by California law and controlling U.S. federal law" (*id.*), the Court must apply

9   California law to interpret the scope of the forum selection clause.  *FCX Solar*, 2021 U.S. Dist.

10  LEXIS 204829 at *13-14 (applying New York law to interpret the scope of the forum selection

11  clause).  Here, the forum selection clauses cover any claims "arising out of or relating to [these]

12  Agreement[s]."  Dkt. 11-2 ¶ 12.3; Dkt. No. 1-5 ¶ 11.3.  Under California law, a forum selection

13  clause covering claims "arising under" an agreement covers all claims that "cannot be

14  adjudicated without analyzing whether the parties were in compliance with the agreement

15  containing the clause."  *See Rey*, 666 F. App'x at 676.

16          Each of Actian's claims in this case "arise out of" the EULAs because SS&C's non-

17  compliance with the EULAs is central to their adjudication.  *First*, as to breach of contract,

18  Actian seeks redress for SS&C's ongoing breach of the EULAs, including the v13 EULA and

19  the v14 EULA.[3]  *See, e.g.*, Dkt. No. 1 ¶¶ 28(a)-(g).  Moreover, the EULAs are central to

20  SS&C's breach of the OEM Agreement because they set forth the terms of the licenses that

21  SS&C was required to purchase for hosting or provide to its customers with the OEM Products.

22  *Id.* ¶¶ 17-19, 28(h)-(j); Dkt. No. 1-7 § 1.3.   SS&C violated these provisions of the OEM

23  Agreement by, for example, hosting Software and providing OEM Products without first

24  obtaining the requisite Vx License Sever license required by the EULAs.  Dkt. No. 1 ¶¶ 18-24,

25  28(h)-(j).  Thus, the Court cannot adjudicate whether SS&C violated these terms of the OEM

26

27  [3] It is likely that SS&C is also in violation of the v15 EULA, but to date SS&C's counsel have
    refused to provide any discovery.

28                                              10

1    Agreement without analyzing the EULAs. *See Rey*, 666 F.App'x at 676. *Second*, as to the

2    copyright claims, the Court will need to consider SS&C's, and its customers', non-compliance

3    with the terms of the EULAs in order to determine whether SS&C used, installed, copied, and

4    distributed the Software outside the terms of its licenses under the EULAs and OEM

5    Agreement. *E.g.*, Dkt. No. 1 ¶ 34-38. *Third*, the negligence claim relates to SS&C's negligent

6    failure to exercise its duty of care to comply with the EULAs and the portions of the OEM

7    Agreement implicating the EULAs by, among other things, failing to recognize that the EULAs

8    required it to distribute the OEM Products with Vx Server Edition license. *E.g.*, *id.* ¶ 44-48.

9    Thus, the Court will need to whether SS&C negligently failed to comply with them.

10        In short, jurisdiction and venue is proper because all the claims in this action are subject

11   to the mandatory forum selection clauses in the v13 EULA and v14 EULA.

12                    **2.      SS&C is Bound by the EULAs' Forum Selection Clauses**

13        SS&C argues, erroneously, that it never agreed to the EULAs is not subject to their

14   terms.  MTD at 2.  This is factually incorrect. SS&C agreed to be bound by the terms of the

15   EULAs when it entered into the OEM Agreement and then again each time it has installed

16   and used Actian's Software.  Dkt. No. 1-7 §§ 1.3, 3.1; Gu Decl. ¶¶ 16, 25; Dkt. 1-2 at 1;

17   Dkt. 1-5 at 1.  The v13 EULA and v14 EULA provide that "by downloading, installing or

18   using the software . . . you are agreeing to be bound by this agreement." Dkt. 11-2 ¶ 12.3;

19   Dkt. No. 1-5 ¶ 11.3.  The OEM Agreement expressly provides that if SS&C "is the End

20   User, then the terms of the [] EULA will apply to OEM," where End Users are "parties

21   who use the OEM Product for their own internal business purposes or personal use." OEM

22   Agreement §§ 1.3, 3.1.  SS&C has repeatedly installed and used the Software and done so

23   for its own internal business purposes. *E.g.*, Gu Decl. ¶ 25.

24        SS&C has acquired seven hundred licenses to the Software for its own internal use.

25   Gu Decl. ¶ 13.  For example, in Addendum No. 3 to the OEM Agreement, SS&C

26   contracted for 70 Actian PSQLv13 Client/Server and 70 Actian PSQLv13

27   Workgroup/Workgroup Licenses for ***internal use Only*.*"  Dkt. No. 1-7 at 39 (emphasis

28                                                         11

added).  These licenses were earmarked for use by its support, sales, testing/Q&A, and development teams.  On each occasion that SS&C installed and used the licensed Software, it agreed to be bound under the terms of the relevant EULA.  v13 EULA at 1; v14 EULA at 1; Gu Decl. ¶ 25.  Likewise, when it used the Software for its own internal business purposes (like sale, Q&A, and development), it agreed to be bound to the EULAs under the terms of the OEM Agreement.  OEM Agreement §§ 1.3, 3.1; Gu Decl. ¶ 25.

Prior to the lawsuit, SS&C admitted to Actian that it installed and used versions 13 and 14 of the Software in connection with its Skyline product and observed differences in the behavior of the two versions.  Gu Decl. ¶¶ 18-19; *id.* at Exhibit C; *see also id.* ¶ 25.  Later, in response to an audit request, SS&C admitted that it has installed and is hosting version 13 of the Software as part of its Skyline.  Gu Decl. ¶¶ 21-23, 25; *id.* at Exhibit E at 8.  Each time SS&C installed or used version 13 of the Software (*e.g.*, for hosting), it agreed to the v13 EULA and its mandatory forum selection clause.  Gu Decl. ¶ 25.

SS&C relies on an affidavit from its corporate witness stating that, "SS&C Tech never agreed to be bound by the Pervasive EULA itself" and SS&C "has never used Pervasive's/Actian's products as an end user" Bremner Decl. ¶ 10.  But, as explained above, this is contradicted by SS&C's history of licensing the Software "for internal use Only," and its repeated installation and use of Actian's products.  *E.g.*, Gu Decl. ¶ 25.  For at least these uses, SS&C would be an end-user.  Indeed, it is simply not credible that SS&C could have developed the OEM Products around the Software without installing or testing them with the Software, again as an end-user.  *Id.* ¶ 14.

SS&C contends that it could not have agreed to the EULA because the EULAs are unsigned.  MTD at 2, 15.  EULAs do not require a signature.  Courts have routinely upheld EULAs and other so-called clickwrap agreements so long as the bound party has notice of the agreement and manifests assent.  *E.g.*, *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022).  SS&C is a sophisticated party that was on explicit notice of the EULAs under the OEM Agreement and because Actian always supplied the relevant EULA

1    with each authorized version of its software, and SS&C manifested its assent to the EULAs

2    by installing and using the Software.  Gu Decl. ¶ 18, 25; *see Crawford v. Beachbody, LLC*,

3    2014 U.S. Dist. LEXIS 156658, at *7 (S.D. Cal. Nov. 5, 2014) (finding browsewrap

4    agreement enforceable where it puts a reasonably prudent user on inquiry notice).

5    Likewise, in the signed OEM Agreement, SS&C agreed to be bound by the terms of the

6    EULAs whenever it was an End User of the Software, which as explained above it was on

7    thousands of occasions.  Dkt. No. 1-7 § 3.1.  Finally, to the extent SS&C's agreement to the

8    EULAs is in doubt, the Court should resolve the issue in favor of the plaintiff at the motion

9    to dismiss stage.  *E.g.*, *Ayla, Ltd. Liab. Co. v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 978 (9th

10   Cir. 2021) ("[F]actual conflicts between dueling affidavits must be resolved in the

11   plaintiff's favor." (internal citation and quotation marks omitted)).

12        **B.    Personal Jurisdiction Exists Independent of the Forum Selection Clauses**

13        The Court has personal jurisdiction over SS&C.  As explained above, SS&C has

14   agreed to the mandatory forum selection clause in the v13 EULA and v14 EULA, and

15   therefore agreed to personal jurisdiction in the Court and waived any arguments otherwise.

16   Section IV.A.1 infra.  Even assuming, *arguendo*, that SS&C is not bound by the EULAs,

17   the Court has both specific and general personal jurisdiction over SS&C.

18        **1.    Specific Personal Jurisdiction**

19        The 9th Circuit, applies a three part test for specific personal jurisdiction:  "(1) The

20   non-resident defendant must purposefully direct his activities or consummate some

21   transaction with the forum or resident thereof; or perform some act by which he

22   purposefully avails himself of the privilege of conducting activities in the forum, thereby

23   invoking the benefits and protections of its laws; (2) the claim must be one which arises out

24   of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction

25   must comport with fair play and substantial justice, *i.e.* it must be reasonable." *Morrill v.*

26   *Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017).

27        As to the first prong, SS&C has purposely directed its activities at California by,

28

among other things, engaging in over a decade of contracts with Actian.  Gu Decl. ¶¶ 3-7;

Dkt. No. 1-7.  Plaintiff Actian, throughout the process, has been headquartered in the

Northern District of California.  Gu Decl. ¶ 11; Dkt. No. 1 ¶ 2.  Actian acquired

Pervasive—its predecessor with respect to the Software—in 2012, and was Pervasive's

owner at the time that SS&C entered into the OEM Agreement.  Gu Decl. ¶ 3, 7.  Since

2012, SS&C and Actian have been in consistent contact and maintained a consistent

relationship with respect to the Software.  *E.g.*, *id.*  SS&C sells OEM Products that

incorporate the Software to California residents and through California-based resellers.  *Id.*

¶¶ 26-28.  SS&C maintains four offices in California accounting for 137 employees.

Bremner Decl. ¶ 4.  SS&C has also acquired at least two companies headquartered in

California.  Hatch. Decl., at Exhibits A-C.

As to the second prong, the claims all arise out of SS&C's California activities.  All

three claims arise from SS&C's failure to perform its obligations under its Agreements

with Actian.  Actian is headquartered in California and its executive and in-house legal

personnel responsible assenting to the Agreements and three of its Addendums were based

in California at the time of negotiations.  Gu Decl. ¶¶ 9-11; Dkt. No. 1 ¶ 2.  SS&C

communicated with Actian to obtain licenses, respond to audit requests, and to obtain

service for the OEM Products.  Gu Decl. ¶¶ 9-11, 14-19, 21-23, Exhibits C and E.  SS&C

has breached the Agreements and infringed Actian's copyrights through sales of

inadequately licensed Software in California and through California resellers.  *Id.* ¶¶ 26-28.

Finally, while SS&C has refused to provide discovery, Actian expects that SS&C has

substantial additional sales of the OEM Products in California, and thus the breaching and

infringing activities of SS&C took place in California.

As to the third prong, each of the reasonableness factors enumerated in *Core-Vent*

*Corp.* favor the exercise of jurisdiction for the reasons stated below.  *See Core-Vent Corp.*

*v. Nobel Indus. AB*, 11 F.3d 1482, 1487-88 (9th Cir. 1993).

(1) **the extent of the defendants' purposeful interjection into the forum state's**

*affairs*:  As explained above SS&C has been in business with Actian since 2012, acquired two California companies, maintains four offices and 137 employees and California, and sells the OEM Products to California customers and through California resellers.  Hatch Decl. at Exhibits A-C, Bremner Decl. ¶ 4.

(2) **the burden on the defendant of defending in the forum**:  SS&C faces no difficulties defending a suit in California.  SS&C is a sophisticated entity with offices in the forum.  Bremner Decl. ¶ 4.  And its counsel of record are based in the Northern District.

(3) **the extent of conflict with the sovereignty of the defendants' state**:  SS&C contends that there is conflict with the sovereignty of New York.  New York is not Defendant's state.  Bremner Decl. ¶ 4.  Only the OEM Agreement is subject to New York law, while versions 13-15 of the EULAs are subject to California law.  SS&C also misconstrues the forum selection clause in the OEM Agreement, which is permissive—not mandatory—and expressly identifies New York as the "*[n]on-exclusive jurisdiction* and venue" for disputes.  Dkt. No. 1-7 § 14.4.1 (emphasis added).

(4) **the forum state's interest in adjudicating the dispute**: California has a significant interest in adjudicating this suit because it involves the application of California contract law to EULAs promulgated on behalf of Actian—a company headquartered in California.  In it involves the vindication of the copyrights of a company based in California, and infringing and breaching activity occurs in California.  Gu Decl. ¶¶ 26-28.

(5) **the most efficient judicial resolution of the controversy**:  This Court is the most efficient venue for adjudicating this case.  The case depends largely on California law and concerns contracts assented to and performed on in California.  Actian's operations and executive personnel are located here as are both parties' counsel of record.  Dismissing the case and refiling it would incur undue delay and increased expense for all parties.

(6) **the importance of the forum to the plaintiff's interest in convenient and effective relief**:  California is a more convenient and effective state than New York or Texas because, among other things, facts, Actian's operations and personnel are located

1    here as are counsel for both parties.  And California is the mandatory jurisdiction for all

2    claims arising under the v13 EULA and v14 EULA

3           (7) *the existence of an alternative forum*:  There is no alternative forums because

4    of the mandatory forum selection clauses of the v13 EULA and v14 EULA.

5           Thus the Court should exercise specific personal jurisdiction over SS&C.

6                  **2.      General Personal Jurisdiction**

7           In the alternative, the Court may exercise general jurisdiction over SS&C because

8    its contacts with California are "so continuous and systematic as to render the foreign

9    corporation essentially at home in the forum State." *Ranza v. Nike, Inc.*, 793 F.3d 1059,

10   1069 (9th Cir. 2015) (quoting *Daimler*, 571 U.S. at 133 n.11).  SS&C maintains four

11   offices in California and roughly 4.5% of its employees work in California.  Bremner Decl.

12   ¶ 4.  SS&C has acquired and continues to run and control California-based companies

13   including Advent Software (acquired in 2015, now SS&C Advent) and Captricity (acquired

14   in 2020).  Hatch Decl. at Exhibits B and C. SS&C is thus fully at home in California.  *Cf.*

15   *Ranza*, 793 F.3d at 1073 ("We hold the alter ego test may be used to extend personal

16   jurisdiction to a foreign parent or subsidiary when, in actuality, the foreign entity is not

17   really separate from its domestic affiliate.").

18                  **3.      SS&C's Arguments to the Contrary Fail**

19          SS&C attempts to evade the Court's jurisdiction through a raft of baseless

20   arguments.  *First*, SS&C argues that it entered the OEM Agreement with Pervasive before

21   Actian acquired Pervasive, but is simply false—Actian already owned Pervasive.  Gu Decl.

22   ¶¶ 4-7.  And it does not negate the subsequent decade of the contractual relationship

23   between SS&C and Actian.  *E.g.*, *id.* ¶¶ 8-11.  *Second*, SS&C argues that jurisdiction is

24   appropriate in New York or Texas, but this does not render jurisdiction inappropriate in

25   California.  *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1110, 1113 (9th Cir. 2002)

26   ("[T]he existence of jurisdiction in one forum does not necessarily negate the existence of

27   jurisdiction in another forum.").  *Third*, SS&C argues that Actian "cannot plead" or "cannot

28

                                   16

1   show" that SS&C did "<u>anything</u> in California" or "that the alleged injuries arise out of or

2   relate to [SS&C's] contacts with California."  MTD 9-10.  Here, SS&C has carefully

3   chosen its words to avoid saying it did nothing to injure Actian in California, and it is likely

4   relying on its refusal produce discovery to maintain this fiction.  As set forth in Section

5   IV.B.1, this case arises directly from SS&C's contacts to California—including its history

6   of contracting with Actian and its illicit sales of the OEM Product in California.

7         Finally, SS&C has filed with the Court a five-year-old declaration from different

8   case related to a different software product and different EULAs.  Dkt. No. 33-2.  SS&C

9   contends that this declaration supports a lack of personal jurisdiction in California because

10  it shows that Actian and Pervasive had contacts with Texas.  Dkt. No. 33-1 ¶ 5.  As a

11  threshold matter, the presence of Texas's personal jurisdiction over Actian has no bearing

12  on this Court's jurisdiction over SS&C.  *See also Dole Food*, 303 F.3d at 1110-13.

13  Moreover, the declaration concerns a different case with different parties over a different

14  software product protected by different EULAs.  None of these fact's bear on **SS&C's**

15  contacts with California or its liability under the EULAs in this case.  However, the

16  declaration does confirm that Actian acquired pervasive before the signing date of the

17  OEM Agreement (Dkt. No. 3-2 ¶ 2), directly contradicting SS&C's representations in the

18  MTD that Pervasive had "no connection to California" in September 2013 (MTD at 1).

19         **C.    Venue is Proper in the Northern District of California**

20         Venue is proper in the Northern District for three reasons.

21         *First*, SS&C waived any disputes as to venue when it agreed to the forum selection

22  clause in the EULAs as described above.  *See* Section IV.A supra.

23         *Second*, SS&C "resides" in the Northern District under 28 U.S.C. section

24  1391(b)(1) because it is "'subject to the court's personal jurisdiction with respect to the

25  civil action in question.'" 28 U.S.C. § 1391(c)(2).  The Court has personal jurisdiction over

26  SS&C, and thus venue is proper.  Section IV.B supra.

27         *Third*, venue is proper because the Northern District is "a judicial district in which a

28

1    substantial part of the events or omissions giving rise to the claim occurred, or a substantial

2    part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). As

3    explained above, this case arises from over a decade of SS&C's contracting with

4    California-based Actian, Actian's relevant executive and in-house legal personnel were

5    based in California, and SS&C and its California agents made infringing and breaching

6    sales in California. *See* Section IV.B.1 supra; Gu Decl. ¶¶ 3, 7, 26-28.

7        **D.    SS&C's Alternative Motion under 12(b)(6) Fails.**

8            **1.    Actian Has Stated a Claim for Breach of Contract**

9        SS&C argues that the Court should dismiss the contract claim because of its

10   erroneous ***factual*** contention that it never agreed to the EULAs. SS&C is wrong. And as a

11   threshold matter, dismissal would not be warranted in any event because SS&C identifies

12   no purported defect as to breach of the OEM Agreement, which independently restricts

13   SS&C's rights in accordance with the EULAs. Dkt. No. 1-7 § 1.3.

14       SS&C agreed to the EULAs. As explained above, SS&C had notice of the EULAs

15   and affirmatively acted to agree with them by installing the and using the software under

16   the terms of the v13 EULA and v14 EULA. Section IV.A.2. It also explicitly agreed to be

17   bound by the EULAs when using the Software for its own internal business purposes under

18   section 3.1 of the OEM Agreement. Dkt. No. 1-7 § 3.1.

19       SS&C agreed to the v11 EULA and v12 EULA in much the same way. The v11

20   EULA and v12 EULA provide that "BY INSTALLING THE SOFTWARE, OR

21   AUTHORIZING ANY OTHER PERSON TO DO SO YOU . . . ACCEPT THE TERMS

22   AND CONDITIONS OF THIS AGREEMENT." Dkt. No. 1-3 at 1; Dkt. No. 1-4 at 1.

23   Actian provided SS&C with notice to the EULAs, and SS&C agreed to be bound by them

24   when it installed the Software and authorized others to do the same. *Id.* As with the later

25   versions of the Software, SS&C purchased hundreds of copies of the v11 and v12 Software

26   for its own "internal use Only." *E.g.*, Dkt. 1-7 at 10, 20, 30. It installed and used this

27   Software for its own business purposes, subjecting it to the EULAs under their own terms

28

1    as well as expressly by section 3.1 of the OEM Agreement.  *Id.*; *id.* §§ 1.3, 3.1. And it

2    authorized its resellers to install software it has purchased for their internal use only—

3    accepting the terms of the v.11 and v.12 EULA.  *Id.* at 10, 20, 30.

4        To the extent, SS&C's argument raises an issue of fact as to whether (1) it had

5    notice of the EULAs, assented to them by using, installing, or authorizing others to install

6    the Software or (2) it triggered the EULAs under section 3.1 of the OEM agreement by

7    using for its own internal business purposes under the OEM Agreement, this is an issue of

8    fact that is decided in plaintiff's favor at the motion to dismiss stage. *Gay*, 2016 U.S. Dist.

9    LEXIS 194149, at *2.  SS&C attempts to evade this rule by arguing that the Complaint is

10   self-contradictory in describing SS&C as both an distributor and an end user of the

11   Software.  MTD at 14.  But there is no contradiction.  The OEM Agreement expressly

12   contemplates that SS&C would be both an end user and a distributor (Dkt. No. 1-7 § 1.3,

13   3.1), and it was (*id.* at 10, 20, 30, 39, 50).

14       Thus the Court should not dismiss the breach of contract claim.

15       **2.    Actian Has Stated a Claim for Copyright Infringement**

16       "To establish [copyright] infringement, two elements must be proven: (1)

17   ownership of a valid copyright, and (2) copying of constituent elements of the work that are

18   original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

         **a.    Actian Has Pleaded Direct Copyright Infringement**

19
         SS&C does not dispute that Actian has alleged that it owns valid copyrights—
20
     meeting the first prong.  Dkt. No. 1 ¶ 11 (enumerating copyrights).  SS&C only claims that
21
     the complaint fails to allege direct copyright infringement because the distributed works
22
     were purportedly licensed.  MTD at 15.  This ignores Actian's detailed factual allegations.
23
         The complaint repeatedly spells out, in detail, instances of SS&C installing and
24
     distributing the Software outside the scope of the license.  For example:
25
     •   Actian recently discovered that SS&C habitually selects the least expensive
26           versions of the Software – versions whose license terms do not allow SS&C's uses.
             SS&C's scheme results not only in breaches of SS&C's contracts with Actian and
27           failure to pay, but in widespread unlicensed reproduction and distribution of the

28
                                                19

Software throughout the real property and asset management industries, harming this important market for Actian's software, and constituting acts of widespread copyright infringement.  Dkt. No. 1 ¶ 4.

- Tenants, landlords, managers, vendors, and other users of Skyline and HiPortfolio are serviced by the Software.  *Id.* ¶ 3.

- From SS&C's written and oral [audit] responses, Actian discovered on April 1, 2024, that SS&C was using and distributing the Software in a manner that was not permitted under the Agreements. *Id.* ¶ 22.

- [I]f SS&C wanted to use the Software in a software as a service ("SaaS") application, or distribute to customers to host services, or use outside personal or internal business uses, they were required to purchase licenses to copies of the Vx Server Edition in sufficient quantities for all such uses. *Id.* ¶ 21.

- . . . SS&C had engaged in a pervasive and systematic process of using, reproducing and distributing the lowest priced editions of the Software for non-internal uses such as providing services for third parties, hosting systems for access by third parties, and for SaaS applications, rather than the only edition whose license terms permitted that – Zen Vx Server.  *Id.* ¶ 23.

- SS&C breached the EULAs, for example Section 2.1 of the Version 13 EULA and similar provisions of the other EULAs, by failing to purchase a Vx Server Edition license[.]  *Id.* ¶ 28(c); *see id.* ¶ 28(a)-(j).

These allegations demonstrate that Actian has pleaded, *inter alia,* that SS&C incorporated the copyrighted Actian Software into its own OEM Products, made substantial distributions and sublicences of those applications and hosted the copyrighted Software. Dkt. No. 30, ¶¶ 4–5, 21–22, 36–37.  To do so, it required a Vx Server Edition license (*id.* ¶¶ 17-21), which it did not obtain (*id.* ¶ 22) and refused to obtain (*id.* ¶ 23).  SS&C's actions were outside the scope of the EULAs and the OEM Agreement license (*id.* ¶ 24) and constitute direct copyright infringement (*id.* ¶ 34).  *See also MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 940 (9th Cir. 2010) ("To recover for copyright infringement based on breach of a license agreement, (1) the copying must exceed the scope of the defendant's license and (2) the copyright owner's complaint must be grounded in an exclusive right of copyright (e.g., unlawful reproduction or distribution).").

Actian also pleaded that SS&C does not have a license to distribute the copyrighted

20

Software because the OEM Agreement expired.  Dkt. No. 1 ¶ 14.  Yet it continues to distribute the Software.  *Id.* This, too, is copyright infringement.  *See Adobe Sys.,* 153 F. Supp. 3d at 1144 (copyright claim adequately stated against party distributing software in violation of their agreement requiring product to be bundled with specific hardware).

Thus, Actian has adequately pled direct copyright infringement.  *August Image, LLC v. Trend Hunter Inc.*, 2023 U.S. Dist. LEXIS 162807, at *4 (C.D. Cal. Sep. 12, 2023) (allegations of ownership, registration, and copying without authorization state a claim for copyright infringement); *Zuffa, LLC v. Tanner*, No. 8:24-cv-00041-HDV (ADSx), 2024 U.S. Dist. LEXIS 134325, at *6 (C.D. Cal. June 11, 2024) (denying motion to dismiss where plaintiff pleaded defendant broadcasted copyrighted work without a proper license).

### b.   Actian Has Pleaded Indirect Copyright Infringement

As to indirect copyright infringement, Actian has pleaded sufficient detail to support both contributory and vicarious copyright infringement.

As to contributory copyright infringement, Actian has plead that SS&C "with knowledge of the infringing activity, induce[d], cause[d] or materially contribute[d] to the infringing conduct *of another*."  *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004) (internal citation omitted, emphasis in original).  SS&C built its products to use the Actian Software.  Dkt. No. 1 ¶ 3.  SS&C bundles the Actian Software with its OEM Products along with licenses to the Software for its customers.  *Id.* ¶¶ 14, 35-36, Dkt. No. 1-7 § 1.2.2.  However, SS&C specifically selects the cheapest Actian licenses (Dkt. No. 1 ¶¶ 4, 23, 35-36)—ones that do not cover the use cases for the OEM Products (*id.* ¶¶ 3, 17-21, 35-36).  SS&C also hosts the OEM Products for customers without an adequate license.  *Id.* ¶¶ 18-23, 39.  SS&C is aware of the copyright infringement because it bundles the OEM Products with the Actian Software, it has caused that infringement by providing its customers with inadequate licenses to the Actian Software and programming the OEM Products to exceed those licenses, and in the case of hosting, it directly installs and

1    maintains the software while allowing access to third-parties.  *E.g.*, *id.* ¶¶ 35-36, 39.

2            As to vicarious copyright infringement, Actian has pled that SS&C "(1) ha[d] the

3    right and ability to control users' putatively infringing activity and (2) derive[d] a direct

4    financial benefit from their activity."  *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d

5    928, 934 (9th Cir. 2010) (internal citation omitted).  Actian pleaded that SS&C has a direct

6    financial interest in the infringement because the ongoing infringement of its customers is

7    necessary for SS&C to continue selling its Skyline and HiPotfolio products—indeed that

8    SS&C depends on the Software and thus has continued to provide it after the expiration of

9    the OEM Agreement.  Dkt. No. 1 ¶¶ 3-4. SS&C had the ability to control the infringement

10   because it developed the OEM Products (*id.* ¶ 2), included the Software (*id.* ¶ 3), and

11   controlled the licenses provided to its customers (*id.* ¶¶ 4, 23).  With regard to the hosted

12   OEM Products, SS&C downloads and installs the Software and then makes it available for

13   use by its customers—thus directly controlling and profiting from their access. *Id.* ¶¶ 18-

14   23, 39.

15           Thus, Actian adequately pleaded indirect infringement.  *August Image*, 2023 U.S.

16   Dist. LEXIS 162807, at *6 (party adequately alleged defendant may be liable for

17   contributory or vicarious liability via allegations that defendant repeatedly failed to obtain

18   proper clearances despite knowledge of copyrights and benefitted financially from the

19   infringing activity).

20           **E.    Actian Has Stated a Claim for Negligence**

21           SS&C contends that Actian's negligence claim is barred by New York State's

22   economic loss doctrine and because it is duplicative of Actian's contract claim.  As a

23   threshold matter, the negligence claim, like the contract claim, does not or does not solely

24   arise under New York law.  In any event, SS&C is wrong on both accounts.

25           Actian's claim for negligence is wholly different from SS&C's mere breach of the

26   agreements.  To whit, SS&C is a large, sophisticated software company.  It entered into a

27   relationship with Actian under which Actian provided SS&C with its proprietary and

28                                            22

copyrighted source code SS&C trusting that SS&C would not behave illicitly.  Dkt. No. 1 ¶ 44.  Yet SS&C exercised no controls, distributed the Software without licenses, and failed engage with its customers or Actian regarding appropriate license.  *E.g.*, *id.* ¶¶ 45-47. Instead, it has deceptively and widely distributed copyrighted and proprietary materials to customers who were deceived into believing they had adequate licenses and who now must scramble to determine if their licenses are adequate.  *Cf.* N.Y. Gen. Bus. Law § 538. Actian has spent over a year dealing with the consequences—resulting in anguish, expenditure of time, money, and other resources in efforts to investigate and recover from SS&C's negligent conduct. *Id.* ¶ 48.  Actian's harms, and its sought-after relief thus exceed "merely seeking to obtain the benefit of the contractual bargain through an action in tort." *Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 58 (2d Cir.2012). That claim is thus not duplicative of SS&C's mere breach of the agreements. *Id.*

Finally, New York's economic loss doctrine does not apply for at least three reasons.  *First*, New York's economic loss doctrine applies to contracts for the sale of goods—not service contracts like the distributor agreement at issue here.  *Consolidated Edison Co. v. Westinghouse Elec. Corp.*, 567 F. Supp. 358, 364 (S.D.N.Y. 1983) ("[A] suit for negligent performance of contractual duties is clearly available even where only economic injury is alleged."); *Ajax Hardware Mfg. Corp. v. Indus. Plants Corp.,* 569 F.2d 181, 185-86 (2d Cir. 1977); *MCI Telecomm. Corp. v. John Mezzalingua Assocs., Inc.,* 921 F. Supp. 936, 945 (N.D.N.Y. 1996) (stating that an exception to the "economic loss rule" exists "for claims of negligent performance of contractual services.").  The OEM Agreement is a contract for services and required, for example, that SS&C sell the Software as part of OEM Products, that it do so subject to specific requirements, and that it sell annual minimum amount of licenses.  Dkt. No. 1-7 § 1.2.2, 1.3, 3, 4.6, 4.7; Gu Decl. ¶ 8.

*Second*, New York's law, including its economic loss doctrine, does not apply to the breached EULAs.  The EULAs specify that they are subject to either Texas law (v11 and v12 EULAs) or California Law (v13, v14, and 15 EULAs).  Dkt. Nos. 1-2 § 12.3, 1-3 §

PLAINTIFF ACTIAN CORPORATION'S OPPOSITION TO DEFENDANT
SS&C TECHNOLOGY INC.'S MOTION TO DISMISS

1  11.1, 1-4 § 11.1, 1-5 § 11.3, 1-6 § 11.3.

2      *Third*, New York's economic loss doctrine applies only where a claim is for "purely

3  economic losses." *Travelers Cas. and Sur. Co. v. Dormitory Authority-State of New York*,

4  734 F. Supp. 2d 368, 378 (S.D.N.Y. 2010).   But, Actian alleges more and seeks relief that

5  may be unavailable in a contract claim: "SS&C's breach caused Actian harm including

6  without limitation ***anguish, expenditure of time***, money, and ***other resources in efforts to***

7  ***investigate and recover from SS&C's negligent conduct***. SS&C is liable to Actian for

8  compensatory damages. Actian also seeks an injunction against further negligent conduct

9  by SS&C." Dkt. No. 1 ¶ 48 (emphasis added).  Actian has been, and for the foreseeable

10  future will be, forced to spend considerable time uncovering the extent of SS&C conduct

11  and that harm caused to Actian.  This is non-economic harm and the economic loss rule,

12  therefore, does not apply.  *See, e.g.*, *Paciocco v. Acker*, 121 Misc. 2d 342, 344 (Sup. Ct.

13  Nassau Cnty. 2011) ("[D]amages in a contract action would not include pain and suffering

14  or 'other noneconomic loss.'" (citing *Silberstein v. County of Westchester*, 92 A.D.2d 867

15  (2d Dep't 1983)).  For these additional reasons, too, the negligence claim is not duplicative

16  of the contract claim.

17      Accordingly, Actian has adequately pleaded a claim for negligence.

18      **F.**    **In the Alternative, the Court Should Order Jurisdictional Discovery and**

19      **Allow Actian Should be Granted Leave to Amend**

20      To the extent that the Court believes there is any merit to the MTD, it should order

21  jurisdictional discovery and allow Actian to amend its complaint.

22      Prior to filing this Opposition, Actian served SS&C with discovery requests related to,

23  among other things, facts in SS&C's possession bearing directly on specific jurisdiction.  Hatch

24  Decl. ¶ 3.  SS&C flatly refused to provide any discovery whatsoever, arguing that it might be

25  found to consent to personal jurisdiction if it voluntarily provided discovery.  *Id.* ¶ 4.  Thus, to

26  the extent the sufficiency of the Complaint is in doubt, the Court should order SS&C to provide

27  discovery so that the Court can make an informed determination of the issue.

28

With regard to amending the Complaint, the policy of allowing a party to amend its pleadings is one of "extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quotation and citation omitted). Relevant factors include undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962). "The party opposing the amendment carries the burden of showing why leave to amend should not be granted." *Raifman*, 2012 U.S. Dist. LEXIS 64596, at *5. SS&C does not address this issue and thus did not carry its burden. And, as demonstrated in the Gu Decl., Actian could plead additional facts supporting its claims. *See Union Asset Mgmt. Holding AG v. SanDisk LLC*, 227 F. Supp. 3d 1098, 1100 (N.D. Cal. 2017) ("Although a court could not rely on the declaration to deny the motion to dismiss, it could consider the declaration in deciding whether to grant leave to amend.").

Moreover, the additional factors favor granting leave to amend. No prejudice will result from granting Actian leave to amend. This case is still in the pleadings stage and SS&C has provided no discovery. *Gregg*, 2024 U.S. Dist. LEXIS 91208, at *5 . Nor would Actian adding additional factual detail to support its claims constitute prejudice. *Payroll*, 2024 U.S. Dist. LEXIS 105635, at *9. Actian would seek leave to amend within any deadline set by the Court and only if doing so was necessary. *Id*. Actian does not seek leave to amend in bad faith. *Id*. Finally, Actian has not yet amended its complaint, and this amendment would be the only time it has sought to amend to address the issues raised in the MTD. *Id*.

Accordingly, should the Court not deny the MTD, it should order discovery and afford Actian leave to amend.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Actian respectfully requests this Court deny SS&C's Motion to Dismiss, but should it grant any portion of the Motion to Dismiss, the Court should grant Actian leave to file a First Amended Complaint.

1    Dated: December 12, 2024                    By: /s/ Alan Sege

2                                                Alan Sege (CA Bar No. 177350)
                                                 ALAN SEGE ESQ., PC
3                                                13323 Washington Blvd, Suite 302
                                                 Los Angeles, CA 90066
4                                                (310) 957-3301 Telephone
                                                 alan@alansege.com
5

6                                                RYAN E. HATCH (CA Bar No. 235577)
                                                 ADAM J. REIS (SBN 354712)
7                                                HATCH LAW, P.C.
                                                 13323 Washington Blvd, Suite 302
8                                                Los Angeles, CA 90066
                                                 (310) 279-5076 Telephone
9                                                (310) 693-5328 Facsimile
                                                 ryan@hatchlaw.com
10
                                                 *Attorneys for Plaintiff Actian Corporation*
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF ACTIAN CORPORATION'S OPPOSITION TO DEFENDANT
SS&C TECHNOLOGY INC.'S MOTION TO DISMISS